STATE of Missouri,
Plaintiff-Respondent,

v.

Orlan Ray HELT, Defendant-Appellant.

No. 39505.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 9, 1979.

M. E. Williams, Public Defender, Hillsboro, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Carson W. Ellif, Asst. Attys. Gen., Jefferson City, Timothy J. Patterson, Pros. Atty., Jefferson County, Joe A. Johnson, Asst. Pros. Atty., Hillsboro, for plaintiff-respondent.

KELLY, Judge.

Orlan Ray Helt, the appellant, was convicted in the Circuit Court of Jefferson County on a violation of §§ 560.045 and 560.110 RSMo.1969, burglary in the second degree and stealing in the commission thereof, and was sentenced in accordance with the jury verdict, to a term of three years on each charge to the custody of the Missouri Department of Corrections, said terms to be served concurrently. After his motion for new trial was filed, argued and overruled, appellant filed his notice of appeal. We affirm.

On appeal, three points are relied on for reversal of appellant's conviction. Two of these are directed at the failure of the prosecution to reveal to the appellant or his counsel the testimony of two Jefferson County deputy sheriffs offered in rebuttal for the purpose of impeaching the sole alibi witness produced by the appellant at trial. The third point is that the trial court erred in admitting the identification testimony of Mr. Edward R. Dreiman for the reason that it was the product of a suggestive lineup which created a substantial likelihood of misidentification and was, therefore, a violation of appellant's due process rights guaranteed by the 14th Amendment to the United States Constitution.

Appellant does not attack the sufficiency of the evidence to support the jury verdict. Therefore, the jury could have found from the evidence that Grover Cheatham left his house at approximately 9:00 a. m. on April 3, 1977, to go to church and did not return home until 11:00 or 11:15 a. m. During his absence, Mr. Edward R. Dreiman, while on his way to a Quick Shop in his automobile, had occasion to pass Mr. Cheatham's home and as he did so he observed one Roger Camden walking in a field between the Dreiman and Cheatham houses where a turquoise '68 or '69 Ford Fairlane automobile was parked. The front grille of the automobile was missing. Mr. Dreiman fixed the time he made this observation as "just a few minutes past 10." The automobile was parked perpendicular to the street and approximately 5 feet off the edge of the road. Mr. Camden was on the left side of the car and Mr. Dreiman observed another man on the left side of the car. Both men got into the car and Mr. Dreiman stopped and talked to them. He got a good look at both men in the car and he identified appellant as the other man in the car with Mr. Camden. He knew Mr. Camden before but he did not know the appellant previously. Appellant was dressed in a yellow jacket, blue jeans and had on brown gloves. He was about six feet tall, weighed about 160 pounds, and was about eighteen years of age. Mr. Dreiman asked the men what they were doing there and they replied that they were just sitting there. Mr. Dreiman then went on to the store where he spent approximately ten minutes. As he was returning from the store to his home he ob-

served the Ford Fairlane automobile he had previously seen in the field, parked in the driveway to the Cheatham home. Mr. Camden, who was outside the car, ducked behind it. Appellant was carrying "a stereo or something" to the car and put it in the trunk of the car. Mr. Dreiman had stopped his car and sat there observing the activities of Mr. Camden and the appellant for approximately one minute. He left the scene after he observed appellant place the stereo in the trunk of the car and went directly to his home where he called the Sheriff's Department and reported what he had seen. He described the appellant as approximately six feet tall, 180 pounds, 18 years of age, and reddish hair, wearing a yellow jacket, brown gloves and blue jeans. He described appellant's hair as being fairly short and told the Sheriff's Department that he wore a mustache but had no beard. He did not, at that time, know appellant's name and had not, to the best of his knowledge, ever seen him before.

Later that afternoon Mr. Dreiman was called to come to the Sheriff's office where he viewed a lineup. Three men in this lineup wore mustaches; one had a mustache but no beard, and that one was the appellant. He also was the only one in the lineup with short hair.[1] At trial he identified the appellant as the man he observed with Mr. Camden on the morning of April 3, 1977, placing the stereo in the trunk of Mr. Camden's car.

Grover D. Cheatham testified in the state's case that he resided at 2260 Forest Lane, Arnold, Missouri, on April 3, 1977, and departed from his residence between 9:00 and 9:10 a. m. to attend church; that he returned to his home that morning between 11:00 and 11:15 a. m. When he left home the doors to his residence were locked by him, personally. When he returned, the front door was open and one of the windows was broken out of it. He also observed some glass on the floor in the doorway and some inside the doorway and in

the living room also. Sergeant Kluth, a deputy sheriff was at his home when Mr. Cheatham returned there from church. He and the deputy sheriff entered the house and went to the bedroom. Mr. Cheatham noticed that a .410 shotgun was missing from that room and they then went downstairs to the den where he observed that the TV and stereo with two speakers were missing. This was a Quasar TV with a 19 inch screen and the stereo was a Sears-Roebuck product. The next time he saw these items was the following Saturday at the Jefferson County Sheriff's office.

Deputy Sheriff Barry R. Gregory also testified in the state's case. He testified that he and another deputy sheriff, Mr. Forbes, were dispatched to the scene of the burglary and upon arriving there were met by Mr. Dreiman who made a statement to them about what he had observed, described Mr. Camden's car, and described the man with Mr. Camden whom he had seen carrying a stereo out of Mr. Cheatham's home. He then inspected the premises, observed the door to the residence was open and the window glass in the door was broken. Upon entering the building he found no one there but noticed some conditions which caused him to conclude that something had been removed from a counter in the family room. He put out a dispatch on the matter at about 10:45 a. m. At about 1:50 p. m. he went to the Smallwood residence where he observed Mr. Camden in his 1968 Ford Fairlane, two-door automobile, which was turquoise in color and with a missing front grille. This car fit the description Mr. Dreiman had given him when he reported the burglary. Appellant was there and the deputy sheriff placed him under arrest. At approximately 2:07 p. m. the deputy sheriff was informed that the stolen property could be found in the "Case residence," a vacant house. Sergeant Kluth told him that Roger Camden was the source of this information. The Case residence is located a few hundred yards from, and to the rear of, the Smallwood residence. The Smallwood residence

---

1. Although photographs of this lineup—Defendant's Exhibits B and C—were referred to in an in-chambers discussion with the trial court

and counsel, and later were offered and received into evidence, they were not filed in this court.

is the dwelling of appellant's mother, Doris Smallwood, the lone alibi witness for the appellant, with whom he resided at the time of his arrest. Deputy Sheriff Gregory recovered from the attic of the Case residence the Quasar television set with the same serial number as that which Mr. Cheatham had reported missing, the stereo turn table and 8 track, the two speakers, and the .410 shotgun.

The appellant and Mr. Camden were taken to Hillsboro and later the deputy sheriff called Mr. Dreiman to come to Hillsboro. He was present when the lineup was conducted and when Mr. Dreiman "selected Mr. Helt from the group."

Appellant did not take the stand in his defense. His mother, Mrs. Smallwood, testified that on the morning of this occurrence appellant did not get out of bed until about 10:20 a. m. and started out the door around 10:30 a. m. Just prior to appellant's going out the front door she observed Roger Camden's car. Roger Camden is her son-in-law, married to appellant's half-sister, Donis. She observed the clock on the wall because she and appellant were arguing about his going out so early on a Sunday morning. Appellant was clothed in medium brown or light brown pants, and a dark red pullover shirt with a number on the front. He was in and out of the house that morning. Mr. Camden returned to the Smallwood house about ten minutes prior to the time the police officers arrived, sometime after 1:30 p. m.

On cross-examination Mrs. Smallwood was asked whether she recalled a conversation with Officers Forbes and Gregory about 2:00 p. m. on the afternoon of April 3, 1977. She replied that she had talked with a couple of officers but she did not know their names. She denied that she made a statement that appellant had left at 9:00 o'clock in the morning with Mr. Camden and came back around 10:30 or 11:00 a. m. that morning.

In rebuttal, the state produced both Deputy Sheriffs, Gregory and Forbes, who testified that when they were at the Smallwood home on the afternoon of the 3rd of April, 1977, Mrs. Smallwood stated that appellant and Mr. Camden left around 9:00 a. m. to go to Hardy's Market at the corner of West Four Ridge and Highway 21, and returned later, and she couldn't understand why it took them so long.

Mrs. Smallwood was permitted, in surrebuttal, to testify that she recalled having a conversation with the deputy sheriffs when they came to her house on April 3, 1977. She reiterated her prior testimony that she told them appellant got up about 10:20 a. m.; that she'd seen Roger Camden's car earlier that morning when she looked out of her house at about 9:00 a. m., that she did not know what time Roger left the front of the place, but that he did return in front of the house about 10:30 a. m., appellant whistled to him, and Roger stopped and appellant went out the door. She also testified that the deputy sheriffs asked her if appellant had left and she told them he had been to the store with Roger and had returned around noon.

When the cause was submitted to the jury the court read Instruction No. 8 wherein the jury was instructed that if they found and believed from the evidence that on some former occasion a witness made a statement inconsistent with his testimony in the case, the jury might consider such evidence for the purpose of deciding the believability of the witness and the weight to be given to his testimony; however, in deciding the guilt or innocence of the defendant, any prior statement of the witness could not be considered by the jury as evidence of the matters contained in the statement. MAI–CR 3.52.

On appeal the appellant presents three Points Relied On as grounds for the reversal of his conviction. Points I and III are directed to the admission into evidence of the rebuttal testimony of Deputy Sheriffs Gregory and Forbes set out above, concerning a statement attributed to Mrs. Doris Smallwood, made at her home on April 3, 1977, when appellant was taken into custody and which was in contradiction of her testimony at trial.

Appellant's first point charges that the trial court erred in overruling his motion to strike the testimony of these officers because this evidence had not been disclosed to him despite the fact he had complied with the requirements of Rule 25.34(A)(5) and advised the state of his intent to rely on alibi as the defense to the charge for which he was on trial. His second point is that the trial court was guilty of plain error in imposing judgment and sentence on him because the state "recklessly or intentionally suppressed evidence *favorable* to the appellant in violation of" (emphasis supplied) the due process requirements of the Fourteenth Amendment to the United States Constitution. In support of this latter Point, appellant accuses the assistant prosecuting attorney of stating falsely to the trial court at a hearing on his motion for new trial that the state did not learn of Mrs. Smallwood's prior inconsistent statement until immediately before the deputy sheriffs came into the courtroom to testify and that this misrepresentation contributed substantially to the trial court's overruling of his motion for new trial and the entry of judgment.

The evidence of which appellant complains came in on rebuttal without any objection. Appellant's trial counsel cross-examined each of the deputy sheriffs and developed from them the fact that this alleged conversation of Mrs. Smallwood was not mentioned in any of the police reports which were furnished to him by the prosecution pursuant to the provisions of Rules 25.32 and 25.37. He also developed from Deputy Sheriff Gregory that he remembered the conversation again when he saw Mrs. Smallwood that morning, June 1, 1977.[2] From Deputy Sheriff Forbes appellant's counsel developed that he had never discussed Mrs. Smallwood's conversation with the prosecuting attorney but conceded that he had discussed it with Deputy Sheriff Gregory when he was asked by Gregory if he remembered any statement that Mrs. Smallwood had made. Gregory then told him that he remembered Mrs. Smallwood

making a statement that "they had left the house together."

It was not until Forbes was excused from the witness stand and the court was in recess, that appellant's trial counsel, in the chambers of the court, for the first time indicated any objection to this line of rebuttal. He then moved that the testimony of the two rebuttal witnesses be stricken from the record on the grounds that the information about which they testified was subject to disclosure and became known to the state at approximately 12 o'clock "today," that there was a continuing duty on the part of the state to disclose said information when it became aware of it and because the witnesses admitted having discussed their testimony with one another in violation of the rule of exclusion of the witnesses from the trial.

■ Under these circumstances we hold that this point was not preserved for review. *State v. Kelly,* 539 S.W.2d 106, 110[9] (Mo. banc 1976); *State v. Taylor,* 486 S.W.2d 239, 243[5] (Mo.1972). The record here does not present a situation where defense is caught by surprise by the answer. During Mrs. Smallwood's cross-examination the assistant prosecuting attorney inquired of her:

"Q. Do you recall having a conversation with Officer (sic) Forbes and Gregory about 2:00 in the afternoon of April 3rd?

A. Couple of officers. I don't know who they were.

Q. Did you make a statement as to this that your son had left at 9 o'clock in the morning with Mr. Camden and come back around 10:30 or 11:00?

A. No, I did not."

When deputy Gregory was being interrogated by the assistant prosecuting attorney *in rebuttal the following took place:*

"Q. Officer Gregory, on the 3rd day of April, 1977 you previously testified that you went to the Smallwood residence and there arrested Orlan Helt and Roger Camden?

2. This trial consumed one day.

A. Yes, sir.

Q. At that time did you have an opportunity to talk to Mrs. Doris Smallwood?

A. Yes, sir.

Q. Did you ask her specifically the whereabouts of Roger Camden and Orlan Helt on that morning?

A. Yes, sir.

Q. What did she tell you and where did she say they had been?

A. She stated Orlan and Roger left supposedly around 9:00 a. m. to go to the Hardy's Market which is a little Quick Shop or confectionary and grocery at the corner of West Four Ridge and Highway 21.

Q. What time did she tell you they returned?

A. She didn't state a specific time. She said it was later on is the way she phrased it, to the best of my knowledge.

Q. Did she put it in terms of reference around 10:30, or anything like that?

MR. WILLIAMS: Object to the leading of the witness.

Q. (By Mr. Johnson) Well, as best you can recall what were her precise words?

A. She stated that they left together around 9:00 a. m. to go to Hardy's Market to pick up some items and they didn't return until—I can't remember exact words. It was something like 'later,' but she couldn't understand the reason it took them so long.

Q. But she did tell you they left at 9:00 together?

A. Yes, sir.

Q. Who was with you when she said that?

A. Deputy Forbes."

Appellant's counsel then proceeded to cross-examine deputy Gregory as previously stated supra. Upon the completion of deputy Gregory's testimony the next prosecution rebuttal witness was deputy Forbes. He corroborated deputy Gregory's testimony concerning the conversation with Mrs. Smallwood and no objection was made to the questions propounded to him nor his answers thereto on this subject matter. Claim of prejudicial error concerning the admission of testimony to which no objection was made at the earliest opportunity after the grounds became apparent cannot be considered on appeal because it is not properly preserved for review. *State v. McClure*, 504 S.W.2d 664, 668[6] (Mo.App. 1974). We rule this point against appellant for this reason.

The next point, Point III of appellant's Points Relied On, is directed at what appellant contends is the suppression of evidence "favorable" to his case, as we read the Point as stated. However, what he is really complaining about is what he labels a misrepresentation by the assistant prosecuting attorney made to the trial judge during the argument on his motion for new trial wherein he raised an alleged trial error, i. e. the refusal of the trial court to strike the rebuttal testimony offered by the state because the state failed to disclose to him, as required reciprocal discovery, the fact that these two deputy sheriffs would rebut his alibi defense. *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973); *State v. Curtis*, 544 S.W.2d 580, 582 (Mo. banc 1976). He contends that it was this misrepresentation which caused the trial court to deny his motion for new trial and constitutes "plain error" entitling him to a new trial.

During argument on the motion for new trial, the prosecuting attorney advised the trial judge that he was totally unaware of any statement that Mrs. Smallwood made to the two deputy sheriffs who testified in rebuttal until after Mrs. Smallwood had testified on behalf of the defendant. He recalled that no recess was taken at the conclusion of the defendant's evidence, and that deputy Forbes immediately took the stand and testified to what Mrs. Smallwood had said to him about the defendant leaving her home at 9:00 o'clock in the morning. "It was just pointed out to me in the hall-

way as he was coming in, or shortly before he came in, as a witness to testify." [3]

It is apparent from the transcript that the basis for the trial judge's ruling denying the motion for new trial was that he was of the opinion that there was some duty on the part of a defendant, who has been required to comply with the request of the state to disclose whether he intends to rely on the defense of alibi, and if so, to furnish to the state the information required by Rule 25.34(A)(5), to file a further request requiring the state to disclose whether it has any evidence to rebut his alibi and the names and addresses of the state's witnesses whose testimony would furnish said rebuttal. In other words, although Wardius requires reciprocal discovery, it is the defendant who must initiate a request for this information before the duty to reciprocate comes into play.[4] While the trial court did say that it was of the opinion that it was only after Mrs. Smallwood had completed her testimony that this information which would rebut her testimony was brought to the attention of the prosecutor and there was no "sandbagging or poker playing on the part of the state," [5] this was not the basis for overruling appellant's motion for new trial. The trial court also considered that the testimony of the deputies was by way of impeachment as much as rebuttal.

■ Although these questions present fertile fields for decision, we are not inclined to resolve them in the posture in which this case has come to us. As we have previously held, any review with respect to the admissibility of this evidence was not preserved because the evidence came in without objection, and would not therefore, require that the trial court grant a new trial on the grounds that it was erroneously admitted even if the prosecutor did misrepresent to the court the time frame within which he learned of the existence of the rebuttal evidence.

■ Appellant acknowledges that he did not preserve this error, if it was error, and requests that we consider it as plain error. We deny this request because we find no manifest injustice or miscarriage of justice in appellant's conviction which has resulted from this evidence. There is more than sufficient evidence to support the verdict of the jury without this line of testimony. Nor do we entertain appellant's request that we afford him review on the question of "suppression of evidence." The rebuttal evidence does not fit the pattern of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) relied on by appellant; it is not "favorable" to his defense nor is it exculpatory. This evidence serves to impeach his one alibi witness by means of a prior statement inconsistent with her trial testimony. We rule this point against appellant.

**3.** The assistant prosecuting attorney's memory with respect to the circumstances of this matter was somewhat inaccurate if his statement made to the trial court is reported verbatim, because he said: Tr. P. 218: "As a matter of fact, the officer Forbes immediately took the stand following Mrs. Smallwood and testified to the incident wherein she was alleged to have related to him that Mr. Helt left the house at 9 o'clock in the morning." As a matter of fact, an investigator for the public defender's office testified, and then deputy Gregory was the first rebuttal witness; deputy Forbes, the last.

**4.** There is nothing said in *State v. Curtis*, supra, to support this requirement.

**5.** Aided by the transcript, we reach a conclusion different from that reached by the trial court with respect to when the prosecution initially became aware of the purported contradictory statement of Mrs. Smallwood. The trial prosecutor, *during cross-examination of Mrs. Smallwood*, laid a foundation in specific phraseology concerning the alleged conversation with "Officer (sic) Forbes and Gregory about 2:00 in the afternoon of April 3rd?" "Q. Did you make a statement as to this that your son had left at 9 o'clock in the morning with Mr. Camden and come back around 10:30 or 11:00?" Did he just happily choose this phraseology and lay this foundation for impeachment only to learn after Mrs. Smallwood's testimony had been concluded that this was the conversation she'd had with these two deputy sheriffs? If he did it was quite a coincidence. We believe the prosecutor had to have knowledge of this purported conversation sometime prior to the cross-examination of Mrs. Smallwood.

■ Appellant's Point II, that the trial court committed plain error in overruling his objection to a question propounded by the assistant prosecuting attorney to Mr. Dreiman whether he again identified persons he saw at the Jefferson County Jail as the same persons he saw at Mr. Cheatham's house, was not preserved for review.

It is the appellant's contention that it was error to permit the witness to answer this question because the identification made at the Jefferson County Jail took place during a lineup which was so suggestive that it created a substantial likelihood of misidentification and constituted a denial of his due process rights guaranteed by the Fourteenth Amendment to the United States Constitution.

No attack was made upon the admissibility of the in-court identification of the appellant by any pre-trial motion to suppress on the grounds that it was tainted. Mr. Dreiman, earlier in his testimony, identified appellant seated at counsel table "with a white shirt on" as the man he saw on the morning of April 3rd, 1977, with Roger Camden, at 10:10 or 10:20 a. m. at the home of Mr. Cheatham, and whom he observed carrying a stereo or T.V. set from the house to Mr. Camden's car parked in the driveway of the Cheatham residence and placing it in the trunk of the Camden automobile. Just a short time previously, Mr. Dreiman had seen both the appellant and Roger Camden in Mr. Camden's car in a field near the Cheatham home and had a conversation with them before he proceeded to the store.

The question to which appellant directs his attack developed in the following manner. Mr. Dreiman testified that after he observed the appellant and Mr. Camden in the driveway of the Cheatham house with the T.V. or stereo, he went home and called the police. He met them when they arrived and accompanied them to the Cheatham residence after telling the police officers the same story he had told the jury in his testimony that morning. He further testified that later, around noon, he went to Hillsboro to the police station after he had been contacted by someone from the Jefferson County Sheriff's office. At this point in his testimony the trial counsel and the judge retired to the court's chambers where a lengthy discussion followed. Appellant's counsel advised the court that his objection was that the prosecution was attempting to reinforce the in-court identification of appellant by Mr. Dreiman by means of a highly prejudicial lineup conducted in the Jefferson County Jail. The prosecutor replied that the record would show that he had not made any reference to a lineup or about the appellant having been picked out of any lineup, and assured the court that he was not going to make any reference to the lineup. The objection was overruled, and upon the reconvening of the trial the witness was permitted to answer that he had identified the appellant at the Jefferson County Jail.

Immediately thereafter, the Assistant Prosecuting Attorney was permitted, without objection, to inquire whether Mr. Dreiman had any doubt in his mind that the man seated in court with counsel and the man he saw in the jail is the man who was there that morning with Roger Camden; and the witness replied "No," without any objection being made. As a matter of fact, the transcript shows that it was appellant's counsel who inserted into the record the fact that a lineup was held when, on cross-examination of Mr. Dreiman, he inquired whether Mr. Dreiman was called to the Sheriff's Department on the afternoon of April 3rd to identify Mr. Camden and another suspect, and whether a lineup was held. It was he who handed to the witness Defendant's Exhibits B and C, asked him if he recognized them and whether they were photographs of the people who were in the lineup. After the witness replied that they were, counsel for the appellant thereupon undertook a cross-examination of the witness with respect to how many of the men in the photo had mustaches; how many had mustaches but no beards, and that no one other than the appellant had a mustache without a beard and had short hair. When this was accomplished, counsel for the appellant offered the two exhibits into evidence and they were received, and passed to the jury at his request.

 If appellant seeks review of this alleged trial error on constitutional grounds, as we conclude he has by reason of his reliance on *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), he has not preserved it for review in this court. To raise and preserve a federal or state constitutional question for appellate review the question must (1) be raised at the first available opportunity, (2) the section or sections of the Constitution claimed to be violated must be specified, (3) the question must be kept alive at every stage of the proceeding, (4) the question must be presented in a motion for new trial and (5) it must be adequately covered in the briefs filed in the appellate tribunal. *Kansas City v. Howe,* 416 S.W.2d 683, 687–88[4] (Mo. App.1967); *State v. Brookshire,* 325 S.W.2d 497, 500[3] (Mo.1959).

The record demonstrates that appellant did not raise this issue at the first opportunity; he did not file a motion to suppress identification on the grounds relied upon in his brief for the first time; his objection at trial was not directed to the exclusion of the witnesses identification testimony but rather to any testimony about a lineup identification for the purpose of bolstering the witnesses in-court identification. The state introduced no evidence of a lineup; it was defense counsel who did that. Finally, appellant did not raise this point in his motion for new trial.

 He asks that we review this alleged trial error as "Plain Error." We believe that he does so because he recognizes the fact that the alleged error was not preserved for review by this court. However, we deny his request because from our study of the transcript we are unable to conclude that there has been a strong, clear showing that injustice or a miscarriage of justice will result unless we exercise our discretion to afford appellant a review of this alleged error of the trial court in the absence of compliance with the prerequisites to review of a constitutional issue. We believe that the evidence here is sufficient to establish appellant's guilt by overwhelming evidence, and therefore this is not a case for application of the beneficent review on the grounds of "plain error" afforded by Rule 27.20(c).

We rule this point against appellant because it has not been preserved.

The judgment of the trial court is affirmed.

WEIER, C. J., and GUNN, P. J., concur.