**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Larry TEAL, Defendant-Appellant.**

**No. 42996.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 19, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 16, 1981.

Application to Transfer Denied
Dec. 14, 1981.

Michael Musich, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Judge.

A jury found appellant guilty of assault in the second degree under § 565.060, RSMo 1978. Appellant was sentenced to five years' imprisonment in accordance with the verdict. He appeals from this judgment.

Appellant submits that the trial court erred in: (1) instructing the jury on first or second degree assault because there was not sufficient evidence of "serious physical injury" to Melody Teal; (2) overruling appellant's objection to questions about the sentence received for a prior conviction; (3) overruling appellant's objections to questions by the state about his alleged violent temper; and (4) overruling appellant's objections to evidence of appellant's failure to offer his explanation before the trial. The judgment is affirmed.

The facts briefly are these. On June 15, 1979, Melody Teal, age 19 months, was thrown several feet in the air and hit the top of a 5 foot high wooden stockade fence face first. The resulting injury to her face and left eye bled profusely and required seven stitches to close.

At the time of the incident, appellant's then wife, Ramona, and appellant were on the back steps of appellant's cousin's house; their daughter was playing in the yard. At that time appellant and his wife were married but living apart (for purposes of collecting welfare), as they had since their marriage except for brief periods of time. Appellant and his wife were sniffing Tullio, a paint thinner, and appellant was drinking beer.

Ramona testified that Melody walked up to appellant and "he just grabbed her and threw her up against the fence when she got up to him." After that, she said, "He didn't do nothing. ... He didn't even turn around. He was looking at the sky. He didn't do nothing even when I was

screaming at him." Melody was bleeding profusely when she fell to the ground after striking the fence. Ramona picked up her injured child, ran down the alley with her and did not see what appellant did after that.

Appellant's explanation was that he picked Melody up to swing her around but lost his grip when he tripped over a toy. Melody was propelled five to six feet through the air by the momentum of the swinging action, hit the top of the stockade fence and sustained injuries to her left eye.

■ In his first point, appellant argues the trial court improperly instructed the jury upon the offenses of first and second degree assault because there was not sufficient evidence of "serious physical injury" to support convictions of such crimes. The point is ruled against appellant.

The "serious physical injury" to which § 565.050, RSMo 1978 (first degree assault) and § 565.060, RSMo 1978 (second degree assault), refer is a "physical injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or. organ." § 556.061(24), RSMo. 1978. Photographs and testimony admitted at trial established that Melody sustained an injury to her face which resulted in substantial loss of blood and which required stitches on Melody's face around her left eye. The injury may have resulted in more permanent harm to Melody's eye, but this could not be finally determined until Melody was older. The foregoing evidence was sufficient to present a jury issue of "serious physical injury."

In his second point, appellant argues prejudicial error resulted from admission of evidence concerning appellant's terms of confinement pursuant to appellant's prior conviction of assault to do great bodily harm. This point is also ruled against appellant.

Appellant testified on cross-examination that he had been convicted of an assault offense in 1979 and sentenced to a year in the workhouse with work release, a sentence he would have been serving at the time of Melody's injury. The prosecutor elicited further testimony from appellant that the work release provision of his sentence was imposed by the judge. At this point, defense counsel interposed his objection to the line of questioning. After discussion out of the hearing of the jury, the court indicated questioning concerning the provisions of appellant's sentence and work release program could become objectionable but that questioning had not yet gone that far. The prosecutor then asked appellant questions concerning appellant's attempt to arrange to see Melody prior to her injury. Appellant telephoned from the workhouse to arrange a meeting on a day that appellant would be out of the workhouse to work. Again, defense counsel objected. The court sustained the later objection. Defense counsel did not request the court to strike the testimony.

■ Appellant's counsel did not make objection until after appellant had answered the questions about the provisions of the sentence he was serving at the time of Melody's injury. The objection was not timely made, and there was no error in overruling the objection. *State v. Boyd*, 600 S.W.2d 97, 99[4] (Mo.App.1980). The trial court sustained defense counsel's other objection to the line of inquiry and no request to strike the answers given was made.

■ Certainly there could be no plain error, Rule 29.12(b), in admitting the testimony of which appellant complains. The state has the absolute right to cross-examine as to prior convictions of a witness and to show the nature and kind of conviction for the purpose of impeachment or as affecting credibility. *State v. Sullivan*, 553 S.W.2d 510, 515[6–7] (Mo.App.1977) *citing State v. Boxley*, 497 S.W.2d 129, 130[1] (Mo. 1973). Such cross-examination is limited only by the restriction that the cross-examiner cannot inquire into the details of crimes leading to prior convictions. *State v. Sullivan, supra.* It is permissible, however, to elicit the nature, dates and places of the occurrences and the sentences resulting from conviction. *State v. Sullivan, su-*

*pra.* The testimony regarding the sentence appellant was serving did not reveal any details of the criminal activities which resulted in appellant's convictions.

Cases cited by appellant merely confirm the trial court's discretion to control the scope of cross-examination by proof of prior convictions, *State v. Porter,* 538 S.W.2d 888, 891[3] (Mo.App.1976) (affirmance of trial court's limitation upon cross-examination), but do not preclude the trial court from permitting questions concerning prior convictions and sentences if the sentence has not been completely served. *State v. Hoelzer,* 493 S.W.2d 703, 706[6] (Mo.App.1973); *accord State v. Newman,* 568 S.W.2d 276, 281[2] (Mo.App.1978).

■ In his third point, appellant argues that prejudicial error resulted from overruling his objection to the question, "Was it true that you have a violent temper?" asked on cross-examination.[1] Appellant had testified on direct examination that he had no reason to be angry with Melody during the evening when she was injured and that he was not angry with her at the time she was thrown against the fence. On cross-examination appellant was asked whether he had a violent temper and whether others thought he had a violent temper. Appellant answered in the negative. Appellant had not attempted to show that he had a nonviolent nature. Contrary to appellant's contention, the trial court's overruling of his objection to questioning concerning appellant's temper did not result in reversible error.

1. The transcript reads in part as follows:
"Q Was it true you have a violent temper?
A (No response.)
MR. PUTZEL: I'm going to object to that question. May we approach the bench?
[There was a conference at the bench after which the objection was overruled.]
....
Q (By Mr. Ankney) Isn't it true that you have a violent temper?
A Not to my knowledge.
Q Not to your knowledge?
A (Shakes head.)
Q Well, the people, around you, would they think you have a violent temper?
A No, I don't think so.

■ The prosecution may not attack the character of the accused unless the accused first puts it in issue by offering evidence of his good character. Nor may the prosecution attempt to show that the accused has a tendency or disposition to commit the crime with which he is charged. *State v. Thurman,* 521 S.W.2d 773, 777–778[4–7] (Mo. App.1975).

■ Nonetheless, not every error in the admission of evidence calls for reversal of a conviction. Only prejudicial error is reversible error. *State v. Williams,* 606 S.W.2d 254, 257[3] (Mo.App.1980).

If appellant was prejudiced by the exchange concerning his temper, it must be upon the basis the questioning was itself prejudicial to appellant because appellant responded to the questioning in a manner favorable to the appellant. *See State v. Dunn,* 577 S.W.2d 649 (Mo. banc 1979). Unlike the questioning in *State v. Dunn, supra,* the general questioning concerning appellant's temper is not such to create substantial prejudice. *State v. Dunn, supra* at 653[4]. The question held to be reversible error in *State v. Dunn, supra,* was put to a defendant in a case for stealing a motor vehicle and was a question concerning a specific act of stealing property from an automobile. *State v. Dunn, supra* at 650. Prior to transferring the cited case to the supreme court, the court of appeals had noted:

"A general question of whether the witness has ever committed a crime may have little effect on a jury. Where, however, the question contains detailed infor-

Q Well, you heard Ramona testify that she thought you did. Did you hear that?
A Yes, I did.
Q And do you think she's not telling the truth about that?
A That must be her opinion.
Q You've never demonstrated a violent temper?
MR. PUTZEL: Your Honor, I'm going to object to that question. May we approach the bench?
THE COURT: Be sustained.
Q (By Mr. Ankney) So it's your opinion that you don't have a violent temper?
A Yes, sir."

mation such as date, location, victim, or nature of the crime, the jury must, as reasonable persons, conclude that the question is based upon information known to the questioner. A negative answer can have little or no effect on this basic conclusion, and a jury is inevitably left with a belief that the witness has committed the inquired of crime, and is a person of bad character."

*State v. Dunn, supra,* at 651.

The supreme court's holding in the cited case reflects a similar distinction between the effect of general and specific questioning. *State v. Dunn, supra* at 653[4]. The court held, "[c]ross-examining a defendant as to alleged *prior acts* of misconduct, particularly where details are stated and the acts are somewhat similar to the case on trial, as here, lends itself to the creation of substantial prejudice even though the answers are in the negative." [Emphasis added.] *State v. Dunn, supra* at 653[4]. Questioning concerning appellant's temper in the case under review was general and amorphous and not such to imply the questioner's knowledge of acts of misconduct upon which the questioning was based.

█ Another factor manifesting the non-prejudicial effect of questioning appellant about his temper is that evidence concerning appellant's temper was previously admitted. Ramona had earlier testified she had observed appellant when he was calm one moment and violent the next.[2] The admission of evidence which is claimed to be evidence of other, unrelated crimes does not result in reversible error if like evidence has previously been admitted and the evidence to which objection has been raised is thus merely cumulative. *State v. Burnside,* 527 S.W.2d 22, 25[5] (Mo.App.1975) (testimony by witness that defendant told the witness defendant had a prostitute and asked whether the witness wanted to "buy some" was cumulative to rape and kidnapping victim's testimony that the defendant asked whether the witness wanted to buy her and was not reversible error). In the

case to be decided, the questioning of appellant concerning his temper added no suggestion of appellant's character other than that already suggested by Ramona's testimony.

In his fourth point, appellant argues his constitutional rights were violated by the state's cross-examination of appellant about his post-arrest silence. Appellant's defense was that Melody sustained her injury by accident. On cross-examination, the prosecutor asked appellant when he first told anyone or the police the incident was an accident. His final point is also ruled against appellant.

█ Appellant's claim that his constitutional rights were violated because of the admission of this evidence was not preserved for appellate review. In order to preserve a federal or state constitutional question for appellate review it must be raised at the first opportunity and the section of the constitution alleged to be violated specified. *State v. Helt,* 581 S.W.2d 604, 612[6] (Mo.App.1979); *Kansas City v. Miller,* 463 S.W.2d 565, 566[1, 2] (Mo.App.1971). No constitutional question was raised by appellant during the trial.

Again, the plain error rule, Rule 29.12(b), does not require reversal for admission of the evidence of which appellant complains. The transcript does not require the conclusion that there has been a strong, clear showing that injustice or a miscarriage of justice will result absent appellate review. *State v. Helt, supra* 581 S.W.2d at 612[7]. The evidence was sufficient to establish appellant's guilt by overwhelming evidence. *State v. Helt, supra.*

The judgment is affirmed.

CRIST and REINHARD, JJ., concur.

---

2. Appellant's counsel objected to further inquiry, but the question put to Ramona concerning appellant's temper and Ramona's answer were admitted without objection.