**STATE of Missouri, Respondent,**

v.

**Denorval BLAINE, Appellant.**

**No. 50350.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 30, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 29, 1986.

Application to Transfer Denied
Dec. 16, 1986.

Dave Hemingway, St. Louis, for appellant.

Timothy W. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Defendant, Denorval Blaine, was prosecuted on the charge of capital murder. He was convicted, after a jury trial, of the lesser included offense of murder in the second degree. He was sentenced to a term of 49 years' imprisonment, to run consecutive to the sentence he was currently serving. He appeals from that conviction. We affirm.

Defendant does not challenge the sufficiency of the evidence. The evidence, viewed in the light most favorable to the verdict, established that defendant was an inmate at the Missouri Department of Corrections in Pacific, Missouri. Accompanied by Roy May, a fellow inmate, defendant went to a room belonging to another inmate, Lindsay Woods (victim). Defendant's purpose was to beat up the victim because of the victim's refusal to pay defendant $10 for some marijuana which defendant had given him. At trial, both defendant and May testified. Although May's version of what transpired after arriving at the victim's room differed from that of defendant, both admitted that, once inside the room, May grabbed the victim in a hold about the neck and shoulders while defendant hit him in the chest. They each accused the other of striking the victim repeatedly in the head until he was bleeding and unconscious. Defendant claimed that May used a broken trophy to hammer the victim on the head. May said that the room was too dark for him to see if defendant used an instrument to hit the victim. Defendant himself was struck several times during the attack and was bleeding.

Some time later, another inmate discovered the victim lying on the floor of the victim's room with a cord wrapped around his neck and tied to a bed. The room was splattered with blood and had been ransacked. A search of the room uncovered defendant's bloodied shirt and pants.

A metal bolt, a towel and May's tennis shoes, all stained with blood, were discovered in a brown bag in a trash container in the building. A dismantled sport's trophy and a bloodied ace bandage were found in a different trash can.

A forensic scientist testified that an analysis of blood samples from the various items revealed the blood to be of the same blood types as the victim's and as defendant's. The assistant medical examiner for St. Louis County testified that the victim had sustained puncture wounds in his chest, consistent with his being struck with the pointed end of the bolt; scalp lacerations, consistent with his being hit with the trophy; and strangulation marks on his neck. He stated that the victim's death was caused by "multiple trauma," or a combination of all the injuries he sustained.

The State introduced into evidence letters written to May by defendant in which defendant cautioned May that they had better get their stories "straight" or they would both "end up with murder." The State also introduced three taped statements in which defendant implicated May and an inmate known as "Shaft," who was the supplier of the marijuana which defendant had given to the victim. In his first statement, defendant denied his complicity in the beating. In two subsequent statements he admitted his participation. He stated, however, that he only hit the victim with his fists; that, when he left the room, the victim was alive but unconcious on the floor with no cord around his neck; that he later saw Shaft coming from the area in which the victim's room was located, carrying a brown bag. He reiterated this position in his testimony at trial.

Defendant was 5'6" tall and weighed 130 pounds; the victim was 6'1" tall and weighed 170 pounds. Defendant testified at trial that the victim had previously raped him and that the victim, after being grabbed by May, had initiated the fight by striking defendant first. An inmate and a prison worker both testified that defendant had told them on separate occasions that he

had killed the victim over some money the victim owed him.

◼ In his first point defendant contends that the trial court erred in overruling his motion to prohibit the State from death qualifying the jury and to order a separate jury for sentencing.

The Supreme Court of the United States recently disposed of the death qualified jury issue. The Supreme Court held that death qualification of capital juries does not violate the constitutional rights of criminal defendants. *Lockhart v. McCree,* —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). The Missouri Supreme Court has consistently espoused this position, most recently in *State v. Roberts,* 709 S.W.2d 857, 868 (Mo. banc 1986). Defendant's contention is without merit.

◼ Defendant's assertion that he was entitled to a new jury in the sentencing stage of the trial is also meritless. The Missouri Supreme Court has explicitly declared that this procedure is not permitted. *State v. Guinan,* 665 S.W.2d 325, 330 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). Defendant's first point is denied.

◼ Defendant next asseverates error in the trial court's refusal to submit his proffered instructions on assault in the first and second degrees. Both parties view assault as a lesser included offense of second degree murder. The linchpin of defendant's argument, on appeal and in his pretrial statements and in-court testimony, was that the victim was not strangled when he left the room. He posits that the jury could have determined from the evidence that the cause of death was strangulation alone and that he had not participated in this act. He asserts that there was sufficient evidence to acquit him of murder in the second degree and to convict him of assault.

A pathologist testified at trial and the following discourse occurred:

[Prosecutor]: And, as a result of your total examination, were you able to decide a cause of death?

[Physician]: Yes, sir.

[Prosecutor]: What would that have been?

[Physician]: I felt the cause of death was due to the multiple trauma, both the lacerations in the scalp, as well as the strangulation.

[Prosecutor]: A combination of all the injuries you saw?

[Physician]: Yes, sir.

During cross-examination, the physician testified that the scalp wounds by themselves were not fatal, but were significant because of the loss of blood they caused. He stated further:

[Physician]: As I said, I don't know how much blood was actually lost, so I have to make the assumption that what I am dealing with here is a combination of things. I cannot tell how much of—what effect or what the percentage contribution of injuries to the scalp may have made.

Under the facts of this case, the claimed assault did not constitute a lesser included offense. Under one view of the evidence, the jury could have believed that the assault by defendant caused or contributed to cause the death of the victim. Assuming that the jury believed the other elements of the crime, defendant would then be guilty of murder in the second degree. "When murder actually results, a first-degree assault instruction is inappropriate." *State v. Richardson,* 674 S.W.2d 161, 164 (Mo. App.1984).

Defendant contends that the jury could have believed his theory of the case. In essence, he argues that he assaulted the victim but that the victim was alive when he left the room. He posits that another person came upon the scene and strangled the victim, causing his death. The linchpin of his argument is that an intervening force, *i.e.,* a third person, destroyed the causal connection between the assault and the homicide, thus entitling him to an assault instruction. Assuming *arguendo* that defendant's evidence could support this conclusion by the jury, we disagree

that this entitled defendant to an instruction on assault.

Under defendant's theory, the jury could find him not guilty of the crime of murder in this case. By his very argument, however, he establishes that the assault in question was not an included offense of the murder; rather the assault was an independent crime committed by him, separate and apart from the homicide committed by someone else. Since he was not charged with a separate criminal assault, he was not entitled to an instruction on it under the evidence in the record. An assault instruction, far from being required, would have been improper because it would have permitted the conviction of defendant for an offense not charged. Defendant's second point is denied.

In his third point, defendant contends that the trial court erred in not submitting his proposed instruction on self-defense because deadly force was necessary to prevent his own physical injury or death at the hands of the victim. Defendant claims that evidence that the victim raped him and was the initial aggressor supported a self-defense instruction, particularly in light of the fact that the victim was forty pounds heavier and six inches taller than defendant.

■ In determining whether there is sufficient evidence for a self-defense instruction, we consider the evidence in the light most favorable to defendant, and ignore the State's evidence except where it is favorable to defendant. *State v. Stubenrouch*, 591 S.W.2d 42, 43 (Mo.App.1979). The quantum of proof necessary to require the giving of a self-defense instruction has been variously defined as "substantial evidence"; "any theory of innocence ... however improbable that theory may seem, so long as the most favorable construction of the evidence supports it"; and "established defense." *State v. Moore*, 711 S.W.2d 533, 536, No. 49107, slip op. at 6–7 (Mo. May 20, 1986). "Defendant's testimony tending to show that he acted in self-defense, by itself, is sufficient substantial evidence to require a self-defense instruction." *Id.*

■ Deadly force may be used in self-defense only when there is: (1) an absence of aggression or provocation on the part of defendant; (2) a necessity, real or apparent, for defendant to use deadly force to save himself from immediate danger of serious bodily injury or death; (3) a reasonable cause for the defender's belief in such necessity; and (4) an attempt by defendant to do all within his power consistent with his personal safety to avoid the danger and the need to take a life. *State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984).

■ Reviewing the evidence in a light favorable to defendant's position and against the backdrop of the *Chamber's* elements, the evidence clearly indicates that defendant and May were the initial aggressors. Defendant's own testimony was that he and May went to the victim's room with the intention of beating him up. The victim did attack defendant, but only after May grabbed and held him about the neck and shoulders. Clearly, there was no "absence of aggression or provocation" on defendant's part. *See Id.*

■ With regard to defendant's physical disadvantage because of his smaller stature, something more than fear of size is required to justify the use of deadly force in self-defense. *Moore*, 711 S.W.2d at 537 (Mo.1986). There must also be an affirmative action by the person feared indicating the immediacy of the danger, the inability to avoid it and the necessity of using deadly force. *Id.* (citing *Chambers*, 671 S.W.2d at 783). Defendant testified that May, who was approximately the same size as the victim, accompanied him to confront the victim. This evidence supports the inference that defendant recognized that he would need assistance in attacking the victim and negates his alleged fear of the victim's size.

There also was no evidence that defendant sought to avoid a physical confrontation with the victim. Rather, the record reveals that defendant placed himself in a physically explosive situation, a choice of his own making. Defendant's own pre-trial

statements and testimony contradicted a claim of self-defense. The trial court properly refused to submit an instruction on self-defense. Defendant's third point is denied.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.