**STATE of Missouri, Plaintiff/Respondent,**

v.

**Michael BLEDSOE, Defendant/Appellant.**

No. 66898.

Missouri Court of Appeals,
Eastern District,
En Banc.

Feb. 20, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 1996.

Application to Transfer Denied
May 28, 1996.

Donald L. Wolff & Paul D'Agrosa, Clayton, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Cheryl A. Caponegro, Assistant Attorney General, Jefferson City, for Respondent.

CRANDALL, Judge.

Defendant, Michael Bledsoe, appeals from his judgments of conviction, in a court-tried case, of two counts of assault in the second degree and two counts of armed criminal action. He was sentenced, as a persistent offender, to two concurrent terms of six years' imprisonment on each of the assault counts to be served consecutively with two concurrent terms of three years' imprisonment on each of the armed criminal action counts.[1] We affirm.

In the early morning hours of March 28, 1993, Billy Hickman and Susan Young were sitting at a table in a bar located in St. Louis County. Hickman was on a "first date" with a woman who had been dating defendant. Young was there with her husband and others. While Hickman and Young were seated next to each other, defendant came up to their table. With a "backhand" swing of a beer bottle, defendant struck Hickman and then Young across their chins. Hickman and Young were both taken to a hospital, where the police took photographs of them. Hickman and Young were treated and released from the hospital.

Defendant first argues the evidence was insufficient to support the second degree assault convictions. He contends the evidence, taken in the light most favorable to the state, is not sufficient to support a finding of "serious physical injury" as required for assault in the second degree. In his first point, defendant addresses the injuries to Hickman; and in point three, the injuries to Young.

This court's review of a court-tried case is the same as for a case tried by a jury. Rule 27.01; *State v. Shaw*, 847 S.W.2d 768, 779 (Mo. banc 1993). We view all evidence in the light most favorable to the state and affirm the trial court's judgment if there is substantial evidence to support its findings. *Shaw*, 847 S.W.2d at 779. We also recognize the trial court's ability to see, hear and judge the witnesses in person, rather than from a cold record on appeal. *Id.*

Defendant committed the crime of assault in the second degree, a class C felony, if he recklessly caused serious physical injury to Hickman or Young. *See* § 565.060.1(3). Physical injury is defined as "physical pain,

1. A divisional opinion was handed down in this appeal reversing defendant's judgments of conviction for assault in the second degree and remanding the cause to the trial court to enter judgments of conviction on two counts of assault in the third degree, both misdemeanors, and for sentencing thereon. The judgments of conviction for two counts of armed criminal action were reversed outright. A motion for rehearing, filed by the state, was granted and the appeal was reargued before the court en banc.

illness, or any impairment of physical condition." § 556.061(20). Serious physical injury is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 565.002(6). Here, we focus on the "serious disfigurement" element of the statute.

■ Disfigurement means to deface or mar the appearance or beauty of someone. *State v. Williams,* 740 S.W.2d 244, 246 (Mo. App.1987). Clearly, both of the victims in this case were disfigured. The issue then is whether the trial judge, as the fact finder, could reasonably conclude that there was serious disfigurement.

Hickman was struck across the chin with the beer bottle. He suffered several lacerations to his lip, chin, neck and ear. When asked whether he had any scars, Hickman testified he had a scar underneath his chin and the trial court noted it could see the scar. Hickman's hospital records indicated a cut on his chin of four centimeters, which is approximately one and one half inches, was sutured. Defendant's blow also broke off a pea-sized piece of one of Hickman's front molars.

Young also was struck across her chin with the broken beer bottle. She sustained multiple facial lacerations and puncture wounds, which were embedded with glass. She received stitches for a laceration on her chin. Her hospital records indicated this cut was one to one and one half inches in length. Young also suffered a one half inch laceration to her lower lip. Young testified that the scarring from the chin laceration left a ledge on her chin, giving her the appearance of having a double chin; and stated, "[E]very morning I have to look at myself in the mirror, see this thing covered...." She also stated that scars remained between her eyes and on her lower lip: "I see all those marks until this day."

■■ Although no longer statutorily required, § 556.061(28), RSMo 1994; *Williams,* 740 S.W.2d at 246 n. 1, permanency of disfigurement is relevant, as a matter of evidence, on the element of seriousness. We have reviewed the testimony, photographs, and hospital records in this case. There was substantial evidence adduced that both victims suffered permanent disfigurement. The cases cited by the state involved injuries somewhat comparable to those present in this case. *See e.g., State v. Williams,* 784 S.W.2d 309, 311 (Mo.App.1990) (three inch laceration to the victim's neck described in hospital record as superficial held to constitute serious disfigurement due to keloid formation of the scar tissue); *State v. Pettis,* 748 S.W.2d 793, 794 (Mo.App.1988) (permanent scar four inches by one sixteenth of an inch on arm); *State v. Williams,* 740 S.W.2d 244, 246 (Mo.App.1987) (five inch wound on neck with resulting hypertrophic, or elevated, scar); *State v. Teal,* 624 S.W.2d 122, 124 (Mo.App.1981) (holding testimony and photographs established nineteen month old victim sustained facial injury resulting in substantial loss of blood and stitches sufficient to present jury issue regarding whether victim suffered serious physical injury). With the exception of *Teal,* these cases held that scarring constituted serious disfigurement.

■ The visibility of the scarring in this case, primarily that of facial scars, is relevant as a matter of evidence in determining whether there was serious disfigurement. Length of the scars is also relevant. The presence of additional injuries, such as Hickman's loss of a substantial portion of a front molar, is another factor to be considered.

■ Injuries suffered by assault victims will differ and therefore whether a victim suffers serious disfigurement is dependent upon the evidence of a particular case. We have enumerated several non-exclusive factors that may be probative on the issue. We appreciate that there may be cases in which an appellate court can hold, based upon a cold record, that as a matter of law, the disfigurement is not serious. That is not the situation in this case. Here, substantial evidence was adduced from which the experienced trial judge could reasonably conclude that Hickman and Young suffered serious disfigurement. Defendant's points one and three are denied.

■ In points two and four, defendant argues that reversal of the underlying felony

convictions requires the reversal of his armed criminal action convictions. Defendant's second and fourth points are premised on a reversal of the underlying felonies. A conviction of armed criminal action requires commission of an underlying felony. *State v. Weems*, 840 S.W.2d 222, 228 (Mo. banc 1992). In view of our holding on points one and three, defendant's second and fourth points are denied.

The judgments of conviction are affirmed.

CRANE, C.J., and REINHARD, PUDLOWSKI, SIMON, AHRENS, CRAHAN, DOWD, RHODES RUSSELL and HOFF, JJ., concur.

SMITH, J., dissents in separate opinion filed.

KAROHL, GARY M. GAERTNER, and GRIMM, JJ., dissent and concur in opinion of SMITH, J.

SMITH, dissenting.

I respectfully dissent.

As appellate judges, we are frequently required to determine whether the evidence in a criminal case is sufficient to establish a level of malevolence necessary for a particular grade of a crime. Normally, the determination is based upon the intent of the defendant, for that establishes the level of malevolence. Were that the determination to be made in this case I would have no difficulty in affirming these convictions, for I have little question that smashing a person in the face with a beer bottle carries such potential for serious injury or death that such conduct establishes an evilness sufficient to justify felony status.

That is not, however, the issue before us. The General Assembly has chosen to establish the line between felony reckless assault and misdemeanor reckless assault as the degree of injury actually inflicted, not that which could have been expected from the reckless conduct. §§ 565.060(3) and 565.070(1) RSMo 1994. The former section imposes felony liability if the defendant recklessly causes serious physical injury to another while the latter requires only physical injury.

Both terms are defined in § 556.061. "Physical injury" means physical pain, illness, or any impairment of physical condition. § 556.061(20). "Serious physical injury" embodies one of three types of injury. It is an injury that (1) creates a *substantial* risk of death or (2) causes *serious* disfigurement or (3) causes *protracted* loss or impairment of the function of any part of the body. § 556.061(28). (Emphasis supplied). Because the three alternatives are utilized to increase substantially the level of criminality of defendant's conduct and the sentence imposed for that conduct, I must assume that it was the legislative belief that the three alternatives were essentially equivalents as to severity of injury. The emphasized words all convey a level of injury rising above mere physical injury into the category of severe or serious injury.

A scar is by definition a disfigurement. *Webster's Third New International Dictionary*, p. 2025. For a scar to be a serious disfigurement it must be a serious scar. If every scar is sufficient to be a serious disfigurement then the adjective "serious" used in the statute has no meaning. While the question is normally one of fact, it is the burden of the state to establish beyond a reasonable doubt that the requisite level of injury required for conviction of a felony has occurred. There must be some threshold level of injury, below which, as a matter of law, no felony has been committed. From the wording of the statute it would appear to me the level of disfigurement must be something corresponding to "substantial risk of death" or "protracted loss or impairment of the function of any part of the body".

The photographs referred to in the majority opinion are of the injuries to the victims from the assault taken immediately after the assault; they do not purport to show the scars which form the basis for a claim of serious disfigurement. The wounds incurred are as described in the majority opinion, but no evidence was adduced on record of the size of the scars resulting from those wounds. The trial court made no finding and gave no description of the scars, other than that it could see the one on Hickman. The

entire description of the scar on Hickman was:

"Q. Okay. You still have any scars on your face from where you were bleeding?

A. Yes, I do.

Q. Could you point them out for us please?

A. Scar underneath my chin here (indicating).

Q. Any others?

A. No."

The entire testimony on the Young scar was:

"Q. How many minutes or hours did they work on you picking the glass out?

A. Probably about an hour.

Q. Okay. All of this was while you didn't have any painkiller?

A. No painkiller until they actually gave me stitches in my chin. I don't recall how many there were. I remember him saying I had a double layer of cuts. To this day I have like a ledge on my chin and every morning I have to look at myself in the mirror, see this thing covered (indicating). They stitched it and pulled it up. That whole thing.

Q. Are there any other places you still have marks from?

A. Up between my eyes where glass cut in there.

Q. You can see all those marks still to this day?

A. I see all those marks until this day.

Q. It's kind of given you the double-chin look?

A. Yes."

I am unable to find in this evidence a basis for a holding that either victim sustained "serious disfigurement" within the meaning of the statute. Nothing in the testimony establishes a scarring of such a serious nature as to be equivalent to "substantial risk of death" or "protracted loss or impairment of the function of any part of the body". Nor can I agree with the majority that the loss of a portion of a molar, one of the back three teeth in the jaw and not commonly visible, can be considered in assessing serious disfigurement. The cases cited by the majority

involved more serious scarring than that testified to in this case. In two of those cases (*State v. Williams*, 740 S.W.2d 244 (Mo.App. 1987); *State v. Williams*, 784 S.W.2d 309 (Mo.App.1990)) the holding relied on by the majority was *dicta* because the issue to be decided was intent to cause serious disfigurement, not whether serious disfigurement actually occurred.

The thrust of the majority opinion is that no matter how little evidence of serious disfigurement is in the record, if the trial court, and presumably the jury, observed the victim, the finding of serious disfigurement is beyond appellate review. I think the right of appeal requires more than that.

I would reverse the convictions of felony assault and armed criminal action, and would enter convictions of misdemeanor assault as to both victims and remand for resentencing.