STATE of Missouri, Respondent,

v.

Reginald WESTFALL, Appellant.

No. SC 84078.

Supreme Court of Missouri,
En Banc.

May 28, 2002.

Dave C. Hemingway, Asst. Sp. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. General, Susan K. Glass, Assistant Attorney General, Jefferson City, for respondent.

RONNIE L. WHITE, Judge.

Reginald Westfall appeals from the trial court's judgment convicting him of first-degree assault and armed criminal action for which he was sentenced to two concurrent twenty-year terms in prison.[1] The judgments as to these convictions are reversed and the case is remanded.[2]

## I.

After completing a job interview on the morning of February 2, 1999, Westfall walked to St. Pius School, which one of his daughters attended. According to Westfall, he saw his car, which appeared to be vacant, parked in the school parking lot.

---

1. Westfall does not appeal from two additional convictions for second-degree property damage and third-degree assault for which he was sentenced to time already served.

2. The principal opinion that follows is largely based upon, and excerpts small portions of, the separate opinion authored by Senior Judge, Charles B. Blackmar for the Missouri Court of Appeals, Eastern District, where this appeal was originally decided.

He entered the front passenger side of the vehicle intending to wait there until his wife returned. Westfall and his wife were separated but their marriage had not been dissolved.

At trial Westfall would testify that as he entered the car he discovered Robert Jenkins, a man his wife had been seeing at various times during their separation, in the driver's seat leaning over into the rear seat. An altercation between the two men broke out after Westfall told Jenkins to get out of his car. Westfall claimed that Jenkins ended up kneeling over him in the front passenger seat, which had collapsed into the back seat, while beating him with what felt like a hard object. Westfall testified that in self-defense he pulled a carpet knife out of his overalls and blindly struck out with it cutting Jenkins several times around the head and neck in an attempt to "get him off me." Jenkins fled.

Jenkins's version of the event was that Westfall got into the car stating, "I'm going to teach you about messing with my wife," and that he then started cutting him. Jenkins testified that Westfall was the initial aggressor and it was only after Westfall attacked him with the carpet knife that he fought back.

The jury found Westfall guilty of first-degree assault and armed criminal action in connection with the fight. On appeal

Westfall argues that the trial court erred in refusing to tender his proposed self-defense instruction, with respect to the first-degree assault charge, and for failing to conduct a hearing on newly discovered evidence demonstrating perjury in Jenkins and his wife's testimony. This Court granted transfer. Mo. Const. article V, section 10.

## II.

The Court will reverse due to instructional error "if there is error in submitting an instruction and prejudice to the defendant." [3] To ascertain whether or not the omission of language from an instruction is error, the evidence is viewed in the light most favorable to the defendant and "the theory propounded by the defendant." [4] If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it.[5]

The general rule is that an instruction must be based upon substantial evidence and the reasonable inferences therefrom.[6] Substantial evidence of self-defense requiring instruction may come from the defendant's testimony alone as long as the testimony contains some evidence tending to show that he acted in self-defense.[7] Moreover, an instruction on

**3.** Rule 28.02(f); *State v. Taylor*, 944 S.W.2d 925, 936 (Mo. banc 1997).

**4.** *State v. Davis*, 26 S.W.3d 329, 331 (Mo.App. 2000); *State v. Jones*, 921 S.W.2d 154, 155 (Mo.App.1996); *State v. Weems*, 840 S.W.2d 222, 226 (Mo. banc 1992); *State v. Chambers*, 671 S.W.2d 781, 782–83 (Mo. banc 1984); *State v. Thomas*, 625 S.W.2d 115, 122 (Mo. 1981); *State v. Cole*, 377 S.W.2d 306, 307 (Mo.1964).

**5.** *State v. Crenshaw*, 14 S.W.3d 175, 177 (Mo. App.2000); *State v. Redmond*, 937 S.W.2d 205, 208–10 (Mo. banc 1996); *Jones*, 921 S.W.2d at 155; *State v. Hopson*, 891 S.W.2d

851, 852 (Mo.App.1995); *State v. Arbuckle*, 816 S.W.2d 932, 935 (Mo.App.1991).

**6.** *State v. Davison*, 46 S.W.3d 68, 75 (Mo.App. 2001); *State v. Daugherty*, 631 S.W.2d 637, 639 (Mo.1982) (overruled on other grounds by *State v. Baker*, 636 S.W.2d 902, 904 (Mo. banc 1982), as noted in, *McKown v. State*, 682 S.W.2d 38, 40 (Mo.App.1984)).

**7.** *State v. Peek*, 806 S.W.2d 504, 505 (Mo.App. 1991); *State v. Blaine*, 719 S.W.2d 900, 903 (Mo.App.1986); *State v. Moore*, 711 S.W.2d 533, 536 (Mo.App.1986); *State v. Boyd*, 498 S.W.2d 532, 534 (Mo.1973). The quantum of

self-defense must be given when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony.[8] Even if no objection is made, the failure to instruct upon a defense supported by the evidence is plain error affecting substantial rights.[9] This Court has also recognized that jury instruction, as to all potential convictions and defenses, is so essential to ensure a fair trial that if a reasonable juror could draw inferences from the evidence presented the defendant is not required to put on affirmative evidence to support a given instruction.[10]

The MAI self-defense instruction provides a selection of four formats with differing language to be used depending upon the evidence in any particular case. The instruction language proposed by Westfall, and refused by the trial court, must be used when "there is an issue as to whether the defendant used deadly force," and it authorized the jury to find that he used self-defense based on either the use of non-deadly force or deadly force.[11] The trial court, however, instructed the jury with the formatted language used only "when the evidence is clear that deadly force was used by the defendant and there is no dispute as to that issue," [12] and the language used in that format predetermines for the jury that deadly force was used. Westfall claims that the evidence supports a factual dispute as to if deadly force was used and that the failure to give his tendered instruction was reversible error.

The heart of the matter is a factual question. Whether Westfall's use of the carpet knife during the physical altercation with Jenkins was "deadly force," or if

proof necessary to require the giving of a self-defense instruction has been variously defined as "substantial evidence," "evidence putting it in issue," "any theory of innocence ... however improbable that theory may seem, so long as the most favorable construction of the evidence supports it," "supported by evidence," "any theory of the case which his evidence tended to establish," "established defense," and "evidence to support the theory." (Citations Omitted) *State v. McQueen,* 431 S.W.2d 445, 448–49 (Mo.1968).

**8.** *State v. Griffin,* 859 S.W.2d 816, 820 (Mo.App.1993); *State v. Adkins,* 537 S.W.2d 246, 249 (Mo.App.1976); *State v. Wright,* 352 Mo. 66, 175 S.W.2d 866, 872 (banc 1943); *State v. Thomas,* 625 S.W.2d 115, 122 (Mo.1981).

**9.** *State v. Meeks,* 619 S.W.2d 830, 832 (Mo.App.1981). One of the State's arguments is that Westfall's instruction was in improper form for having included initial aggressor language in Part A of the instruction and not in Part B, thus not complying with the Notes on Use for MAI–CR3d 306.06. Assuming, arguendo, that the State is correct as to the form of the submitted instruction, the argument still fails. Once Westfall injected self-defense into the case, the trial court was required to instruct on self-defense, even in the absence of a request for such an instruction, and even if such an instruction was offered but not in proper form. *State v. Albanese,* 920 S.W.2d 917, 922 (Mo.App.1996) (overruled on other grounds by *State v. Beeler,* 12 S.W.3d 294 (Mo. banc 2000)).

**10.** *State v. Santillan,* 948 S.W.2d 574, 576 (Mo. banc 1997).

**11.** MAI CR3d 306.06, Notes on Use 4(b)(4) mandating the use of Part B—Specific Instructions [2][D]; Rule 28.02(c). Westfall's proposed instruction read, "If the defendant reasonably believed he was in imminent danger of harm from the acts of Robert Jenkins and he used only such non-deadly force as reasonably appeared to him to be necessary to defend himself, then he acted in lawful self-defense, or if the defendant reasonably believed he was in imminent danger of death or serious physical injury from the acts of Robert Jenkins and he reasonably believed that the use of deadly force was necessary to defend himself, then his use of deadly force was in lawful self-defense."

**12.** MAI CR3d 306.06, Notes on Use 4(b)(2) mandating the use of Part B—Specific Instructions [2][B].

Westfall's actions, several quick strikes with the knife inflicting superficial wounds around the face and neck, could constitute non-deadly force, or "physical force," for purposes of the alternative self-defense instruction? The distinction is critical because the standard for justifying non-deadly self-defense is much lower.

Section 563.031.1 authorizes the use of physical force when and to the extent a person reasonably believes such force is necessary to defend from what that person reasonably believes to be the use or imminent use of unlawful force by the other person. In contrast, deadly force may only be used in self-defense when necessary to protect oneself against death or serious physical injury.[13] The use of deadly force also requires "[s]ome affirmative action, gesture, or communication by the person feared, indicating the immediacy of the danger, the ability to avoid it, and the necessity of using deadly force."[14]

"Deadly force" includes physical force that a defendant uses either with the purpose of causing or with knowledge it will "create a substantial risk of causing death or serious physical injury."[15] "Serious physical injury" is statutorily defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment

of the function of any part of the body."[16] "[T]he question of whether deadly force was used depends not only on the amount of force used but also on the defendant's purpose to cause, or awareness of the likelihood of causing, death or serious physical injury."[17]

While not arguing for a per se rule that use of a knife automatically equates with the use of deadly force, the State urges that Westfall used the carpet knife intentionally to direct the blows to Jenkins's face and throat knowingly creating a substantial risk of death or serious injury. The State contends that the lacerations produced by Westfall resulted in facial scarring constituting "serious disfigurement" for purposes of the definition of "serious physical injury" and that their location proves the injuries were life-threatening. The State maintains this evidence unequivocally establishes that Westfall used deadly force and that no alternative instruction was required. It seeks support for its theories based upon analogy to prior case precedent, relying particularly on *State v. Bledsoe*.[18]

The physician who examined and treated Jenkins after the incident testified that the cuts were not deep or serious, that they produced no nerve or blood vessel damage, and that they were not life threatening.[19]

**13.** Section 563.031.2. The statute also allows for the use of deadly force in instances of rape, sodomy or kidnapping or serious physical injury through robbery, burglary or arson.

**14.** *State v. Watson* 839 S.W.2d 611, 614–15 (Mo.App.1992).

**15.** Section 563.011(1). All statutory references refer to RSMo 1994 unless otherwise specified.

**16.** Section 556.061(28).

**17.** MAI CR3d 306.06, Notes on Use 4(b).

**18.** *State v. Bledsoe,* 920 S.W.2d 538 (Mo.App. 1996). See also *Albanese,* 920 S.W.2d at 925

(overruled on other grounds by *State v. Beeler,* 12 S.W.3d 294 (Mo. banc 2000)); *State v. Powers,* 913 S.W.2d 138, 141 (Mo.App.1996); *State v. Huffman,* 711 S.W.2d 192, 194 (Mo. App.1986); *State v. Moseley,* 705 S.W.2d 613, 618 (Mo.App.1986).

**19.** The cuts on Jenkins included a one and a half centimeter laceration on the nose; a five centimeter laceration on the cheek; a five centimeter laceration descending from the jawbone; two, one centimeter lacerations on the ear; and a seven centimeter laceration across the middle of the neck.

While the physician acknowledged that Mr. Jenkins would have permanent scars, he also testified that his experience was utilized to ensure the scars would be less visible.

The jury may have reasonably found from the physician's testimony that the injuries Jenkins sustained did not create a substantial risk of death or serious injury, and that they constituted the appropriate quantum of physical force, not deadly force, for Westfall's self-defense. Additionally, based upon Westfall's testimony, a jury could reasonably find that in carrying this knife, a tool of his trade he possessed in anticipation of being called to work following his job interview, Westfall had no contemplation that he would use it as a weapon. The jury might have also found that Jenkins kept beating Westfall, overpowered him, and that Westfall spontaneously used the only means at hand to protect himself without any opportunity for reflection on the possible consequences.

The evidence establishes questions of fact as to whether deadly force was used, whether serious disfigurement resulted sufficient to support a conclusion that Westfall's actions created a substantial risk of death or serious injury, and whether Westfall was aware of any likelihood of causing death or serious physical injury. By submitting the jury instruction without the language tendered by Westfall, the trial court treated these questions of fact as matters of law and essentially removed these crucial decisions from the province of the jury.[20]

There is no authority that the use of a knife constitutes the use of deadly force as a matter or law. The citation of *State v. Bledsoe* strongly relied on by the State, not only is of no help in supporting its position, but it also has a positive tendency to mislead. That case simply holds that, in a court-tried case, the judge could have concluded that deadly force had been used. There is not the least intimation that the trial court had to make a finding that deadly force was used, and the failure to provide the alternative instruction removed this issue from the jury's consideration.

The court must have also implicitly concluded, as a matter of law, that Westfall's actions "create[d] a substantial risk of death or serious injury," as required in the statutory definition of "deadly force." The evidence might support, but does not compel, a finding that the cuts Jenkins suffered "caused serious disfigurement" or a conclusion that Westfall created a substantial risk of death or serious injury. The *Bledsoe* opinion notes that "whether a victim suffers serious disfigurement is dependent upon the evidence of a particular case," establishing that serious disfigurement is a question of fact.[21] Moreover, the word "serious" with regard to disfigurement necessarily indicates that there can be disfigurement that is not serious, indicating the degree of disfigurement is also a question of fact.[22]

The trial court's refusal to provide the required language in the instruction also results in a determination that there is no issue of fact as to Westfall's knowledge of the consequences of his use of the knife. As previously observed, "[T]he question of

---

20. The dissent relies solely on supposition for its argument that any reasonable juror would find that Westfall used deadly force under the facts of this case. Therein lies the problem. The jury was not allowed to make this finding, and no amount of speculation by the dissent can cure the instructional error that removed this factual inquiry from the province of the jury.

21. *Bledsoe,* 920 S.W.2d at 540.

22. *Id.* at 541. See dissenting opinion.

whether deadly force was used depends not only on the amount of force used but also on the defendant's purpose to cause, or awareness of the likelihood of causing, death or serious physical injury." The trial court's instruction, as given, deprived Westfall of the opportunity to argue that he had no such purpose or awareness. The attribution of a mental state to Westfall is not supported by any of the cases cited by the State.

## III.

Missouri has traditionally placed great emphasis on legally correct instructions, and this Court has made it clear that criminal defendants should be freely allowed to argue their contentions arising from the facts.[23] The MAI and its Notes on Use mandated the alternative instruction.[24] Failure to provide the required instruction, or give it in accordance with an accompanying Note on Use, may have adversely influenced the jury and is re-

versible error.[25] "[S]uch errors are presumed to prejudice the defendant unless it is clearly established by the State that the error did not result in prejudice."[26] The State failed in its burden to overcome the presumption of prejudice resulting from the failure to comply with the MAI.[27] The judgments of conviction for first-degree assault and armed criminal action are reversed, and the case is remanded.[28]

WOLFF and STITH, JJ., and NEWTON, Sp.J., concur.

BENTON, J., dissents in separate opinion filed.

LIMBAUGH, C.J., and PRICE, J., concur in opinion of BENTON, J.

TEITELMAN, J., not participating.

DUANE BENTON, Judge, dissenting.

According to the majority, the circuit court erred by not allowing the jury to

---

**23.** *State v. Santillan,* 948 S.W.2d 574 (Mo. banc 1997); *State v. Redmond,* 937 S.W.2d 205 (Mo. banc 1996).

**24.** MAI CR3d 306.06, Notes on Use 4(b)(4).

**25.** Rule 28.02(f). See *State v. Isa,* 850 S.W.2d 876, 902 (Mo. banc 1993); *State v. Weems,* 840 S.W.2d 222, 226 (Mo. banc 1992). It should be noted that the grounds for rejecting any "end-run" arguments that the jury must have necessarily decided the factual question concerning the use of deadly force when it convicted Westfall of armed criminal action have also been long-settled in Missouri. "[A]ppellate courts do not reason deductively from the jury's verdict back to their actual intention, where they may have been adversely influenced by an erroneous instruction or by the lack of an instruction required by the statute." *State v. Ogle,* 627 S.W.2d 73, 77 (Mo.App.1981), quoting, *State v. Aitkens,* 352 Mo. 746, 179 S.W.2d 84, 94 (1944). The jury must be entitled to weigh all of the evidence under good instructions. *Aitkens,* 179 S.W.2d at 94.

**26.** *State v. White,* 58 S.W.3d 627, 633 (Mo. App.2001), citing to *State v. White,* 622

S.W.2d 939, 943 (Mo. banc 1981). See also *State v. Livingston,* 801 S.W.2d 344, 348 (Mo. banc 1990); *State v. Petary,* 781 S.W.2d 534, 542 (Mo. banc 1989) (vacated on other grounds *and remanded,* 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), *reaffirmed* 790 S.W.2d 243 (Mo. banc 1990); *cert. denied,* 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990)).

**27.** *Id.* Any deviation from the approved instructions is presumed prejudicial unless the contrary is clearly shown.

**28.** As to his second point, Westfall argues the trial court erred in failing to conduct a hearing on newly discovered evidence consisting of a statement by his wife that she saw Jenkins hit Westfall with a jack handle on June 26, 1998. This evidence, Westfall urges, shows perjury with Jenkins and his wife's testimony. It is unnecessary for the Court to reach this issue, however, because any problem with the introduction of this evidence can be corrected on retrial.

decide whether Reginald Westfall used non-deadly force in self-defense.

Here, Westfall cut the victim six times on the face and neck with his carpet knife. Westfall testified that he "grabbed" one of his tools because the victim "refused to get off me." Westfall "went in my little side pocket area of my coveralls and grabbed it out." The pocket was "down the side of my leg." Once Westfall grabbed the utility knife—the kind with a little latch—he pushed a little button to make the blade come up." "I cut Mr. Jenkins with it." Westfall claimed he just started swinging and couldn't tell how many times he swung the knife.

As for the amount of force the victim used on him, Westfall said he "got beat pretty bad," "dazed" "by constant blows," "with some kind of hard object." Westfall insisted: "I never had a chance to really punch him." "I never punched him." Westfall testified: "I felt at that point that I was gonna get a serious injury, if not killed, seriously, because of what's happened before." Westfall emphasized that the victim had, seven months earlier, attacked him with a 24-inch hydraulic jack handle.

The two preceding paragraphs constitute the evidence in the light most favorable to Westfall. *Deadly force* means force that the defendant knows will create a substantial risk of causing death or serious physical injury. *Section 563.011(1) RSMo 2000.* Based on Westfall's evidence, any reasonable juror would believe that his use of the knife created a substantial risk of causing death or serious physical injury. The trial court did not err in limiting its self-defense instruction to the use of deadly force.

In Point II, Westfall asserts that he is entitled to a hearing on a newly discovered letter.[1] To obtain a new trial based on newly discovered evidence, a defendant must show:

> (1)the evidence has come to the knowledge of the defendant since trial; (2)it was not owing to want of due diligence that it was not discovered sooner; (3)the evidence is so material that it would probably produce a different result on a new trial; and (4)it is not cumulative only or merely impeaching the credibility of a witness.

*State v. Whitfield*, 939 S.W.2d 361, 367 (Mo. banc 1997). Moreover, "a motion for new trial based on newly discovered evidence must be accompanied by proof, either in the motion itself or by affidavits." *State v. Davis*, 698 S.W.2d 600, 602 (Mo. App.1985). The absence of an affidavit or other proof is alone sufficient to deny the motion for new trial based on newly discovered evidence. *Id.* at 603.

Westfall's supplemental post-trial motion was not accompanied by an affidavit or other evidentiary proof of the letter. Even if Westfall had provided proper evidentiary support, the letter does not prove any perjury either by the victim regarding the incident, or by the letter-writer (who was not asked by either party during trial about the facts included in the letter). Accordingly, the letter is not so material that it would probably produce a different result on a new trial.

Because I would affirm the judgment, I dissent.

---

1. The analysis of Point II substantially follows the opinion authored by Judge Mary K. Hoff for the Missouri Court of Appeals, Eastern District, where this appeal was originally decided.