GARY W. LYNCH, J.
Dorian J. Perry ("Defendant"), an inmate in the custody of the Missouri Department of Corrections ("DOC"), at South Central Correctional Center ("SCCC"), was convicted of committing violence against fellow inmate, Carl Johnson, by striking him on the head. See section 217.385.[1] On appeal, Defendant claims that the trial court erred by refusing to submit his proffered jury instruction on the affirmative defense of duress. Concluding that the proffered instruction was not supported by the evidence, we affirm.
Standard of Review
" 'This Court reviews de novo a trial court's decision whether to give a requested jury instruction.' " State v. Bruner , 541 S.W.3d 529, 534 (Mo. banc 2018) (quoting State v. Jackson , 433 S.W.3d 390, 395 (Mo. banc 2014) ). "In determining whether a refusal to submit an instruction was error, 'the evidence is viewed in the light most favorable to the defendant and the theory propounded by the defendant.' " State v. Avery , 120 S.W.3d 196, 200 (Mo. banc 2003) (quoting State v. Westfall , 75 S.W.3d 278, 280 (Mo. banc 2002) ). Viewed in accordance with this standard, the evidence adduced at trial was as follows.
Evidentiary and Procedural Background
Defendant testified that, on October 2, 2014, the date of the charged offense, he encountered Johnson while preparing to use a floor buffing machine in one of SCCC's housing unit wings. A disagreement ensued about who was responsible for the job, and Johnson told Defendant, "we've got to slide[,]" which Defendant understood to mean that Johnson wanted to fight. Johnson "swung on" Defendant, and Defendant pushed back.
Defendant then went to his cell and, although Johnson followed, Defendant's cell mate prevented Johnson from entering. Johnson, addressing Defendant, then stated, "you gonna have to see me[,]" which Defendant took as a threat.
Defendant, thereafter, left his cell to go to the "canteen." Johnson followed and repeated his threat. Defendant testified that he believed he needed to address the *762 situation because, otherwise, Johnson, who was bigger and taller, would hurt him.
Immediately before the incident giving rise to the State's charge against Defendant, Victoria Tausend, a DOC correctional officer, overheard Defendant yell, "you can't fight anyway." She turned around and saw Johnson walking from inside one of the prison housing units into the prison courtyard. She then saw Defendant run after him. A security camera, the footage from which was introduced into evidence as State's Exhibit 1, captured the events that followed. The video depicts Johnson walking toward the courtyard, Defendant running into the frame, from behind, and Defendant striking Johnson's head with his fist.[2] A brief fight then ensues, which is broken up by correctional officers.
During the instruction conference, Defendant objected to the verdict director on the basis that the jury should be instructed on the affirmative defense of duress. Defendant proffered an instruction based on MAI-CR3d 310.24 that read:
If you find and believe from the evidence beyond a reasonable doubt that the defendant engaged in the conduct submitted in Instruction No. ___, you will then decide whether or not at that time he acted under duress.
If you further find and believe that it is more probably true than not true,
First, that Carl Johnson threatened the imminent use of physical force against the defendant, and
Second, that this threatened use of force was such that a person of reasonable firmness in the defendant's situation would not have been able to resist, and
Third, that defendant was thereby coerced into engaging in the conduct submitted in Instruction No. ___, and
Fourth, the defendant did not recklessly place himself in a situation in which it was probable he would be subjected to threatened use of such force,
then you must find the defendant not guilty by reason of acting under duress.
As used in this instruction, a person acts recklessly as to the existence of a situation if he consciously disregards a substantial and unjustifiable risk that such a situation exists and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise.
("Instruction A").[3] The trial court overruled the objection, explaining, "the evidence presented references a threat of future violence from the victim, [Johnson], without reference to when that violence would be carried out."
The case was accordingly submitted without Instruction A, the jury ultimately found Defendant guilty as charged, and the trial court sentenced him to ten years' incarceration to run consecutive to the sentence *763 he was already serving. Defendant timely appeals.
Discussion
In his sole point on appeal, Defendant contends that the trial court erred in refusing Instruction A. He claims that "there was evidence from which the jury could have found that [Defendant] committed violence against [Johnson] under the threat of imminent physical force by [Johnson] that induced [Defendant]'s well-grounded apprehension of seriously [sic] bodily injury, which coerced [Defendant] to hit [Johnson] on the head." We disagree.
As relevant here, to give rise to the defense of duress, the coercive threat must be present , imminent , and impending. State v. Lane , 834 S.W.2d 242, 245 (Mo.App. 1992). "The threat cannot be of future action, nor can a person who has a reasonable opportunity to avoid the act claim duress as a defense." Id.
In State v. Kelly , an inmate carrying a knife was convicted of illegally possessing a weapon on the premises of a correctional facility. 747 S.W.2d 639, 640 (Mo.App. 1988). The inmate claimed duress because he had been attacked in the prison on previous occasions. Id. On appeal, the denial of his duress defense was affirmed because he could have sought protective custody in prison (and had done so) such that any threat of harm was a threat of future harm, not a present, imminent, and impending harm. Id. at 641.
Defendant argues that because "Johnson threatened him immediately prior to the incident caught on video [in State's Exhibit 1] ... [t]he threat of physical violence against [Defendant] was not, therefore, merely of 'future violence.' " Defendant's argument, however, ignores that Johnson, after threatening Defendant, walked away. It was at this point, when Johnson had turned his back on Defendant and had withdrawn from the threatening situation, that Defendant committed the charged offense by striking Johnson from behind as he was walking away. Up to that moment, Johnson's repeated threat, "you gonna have to see me[,]" was nothing more than a threat of future action , which is not sufficient evidence to sustain a duress theory. See id. Defendant had the opportunity to ask for help and did not do so. See id.[4] As is the case here, "[t]he instruction on duress must be given only if supported by evidence, and no error results from a court's refusal to give an instruction that lacks evidentiary support." Id. Point denied.
Decision
The trial court's judgment is affirmed.
MARY W. SHEFFIELD, P.J.-concurs
DON E. BURRELL, JR., J.-concurs

All statutory references are to RSMo. 2000.

Defendant's version of events track with what is depicted in State' Exhibit 1:
Q. [ (by the prosecutor) ] Okay. All right. Now, that was you who ran-who was running from the bottom of the screen, correct?
A. [ (by Defendant) ] Yes, sir.
Q. All right. And you approached [Johnson] from behind?
A. Yes, sir.
Q. All right. You hit him?
A. Yes, sir.

Duress-the theory propounded by Defendant in Instruction A-is defined by statute as
an affirmative defense that the defendant engaged in the conduct charged to constitute an offense because he was coerced to do so, by the use of, or threatened imminent use of, unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist.
Section 562.071.1.

In the argument portion of his brief, Defendant cites his own testimony that he could not talk to a correctional officer about Johnson's threat because "that is called snitching and that's-probably you get dealt with even worse than doing that." That belief of future action by an unknown person, however, does not negate Defendant's actual opportunity to seek available help given that Defendant, as explained above, was not threatened with the imminent use of physical force.