

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,        )     *Opinion issued January 11, 2022*
                             )
           Respondent,    )
                             )
v.                              )     No. SC98856
                             )
SAMUEL JERRY WHITAKER,     )
                             )
           Appellant.     )

### APPEAL FROM THE CIRCUIT COURT OF IRON COUNTY
The Honorable Kelly W. Parker, Judge

Samuel Whitaker appeals his judgment of conviction after a jury found him guilty of voluntary manslaughter and armed criminal action. Whitaker argues the circuit court erred in refusing to give the self-defense instruction he requested. This Court has jurisdiction, Mo. Const. art. V, sec. 10, and holds there was substantial evidence to support giving that instruction. Because the failure to submit this instruction prejudiced Whitaker, the circuit court's judgment is vacated, and the case is remanded for further proceedings.

### Background

Considering the evidence in the light most favorable to the self-defense instruction Whitaker requested, the record shows that, from 2009 to 2013, he owned a piece of

property containing three trailer homes. He resided in one of them, and his stepdaughter, Sierra Streeval, together with her husband, Carl Streeval ("Streeval"), moved into one of the others. In March 2012, Whitaker entered into a contract with the Streevals to sell them that trailer. The Streevals agreed to pay $200 per month for four years. The Streevals stopped making payments about a year later, and Streeval moved out of the trailer. Sierra Streeval then sought and obtained an order of protection prohibiting Streeval from being on the property.

In October 2013, Streeval returned to the trailer expecting to live there. An altercation ensued between Whitaker and Streeval that resulted in Streeval threatening Whitaker with arson. Law enforcement arrived and instructed Streeval to leave the property and not return due to the order of protection against him. Two days later, Streeval obtained assistance from the sheriff's office in regaining possession of the trailer after claiming ownership under the 2012 purchase contract between him, Sierra Streeval, and Whitaker, as well as the title to the trailer.[1] After Streeval took possession, Whitaker went to the sheriff's office several times and asserted he was the true owner in an effort to have Streeval removed from the property. Whitaker was unsuccessful. Whitaker then went to the recorder of deeds and paid for a copy of the title to his property.[2]

---

[1] Whitaker claimed Streeval obtained the title from Sierra Streeval, who had stolen it from Whitaker.

[2] At trial, multiple people testified Whitaker was the owner of the land and the trailers on it, though no record of Whitaker's ownership was admitted. This Court makes no finding about ownership of any real or personal property. Rather, it views all of the evidence in the light most favorable to the requested instruction.

Whitaker returned to the property and, as he was eating dinner in his own trailer, Streeval arrived outside and began yelling and threatening Whitaker with arson. Throughout dinner, Whitaker could hear Streeval outside yelling that he had until dark to get off the property. After dinner, Whitaker went outside to feed his dog and took his shotgun with him in case Streeval became violent. Streeval was still outside threatening Whitaker with arson, gas jug in hand. Streeval ran toward Whitaker and attempted to take the gun, and Whitaker shot Streeval, resulting in a non-fatal head wound. Streeval then took the gas jug, retreated into the trailer he claimed he owned, and called the police.

Whitaker testified he was concerned Streeval would set the trailer on fire and, therefore, followed him into the trailer. As Whitaker entered the trailer, Streeval went into the bathroom, leaving the gas jug just outside the door. Whitaker walked toward the bathroom door and told Streeval he was going to take the gas jug. Streeval then burst through the bathroom door, knocking it off its frame and onto Whitaker, who dropped the gas jug. Whitaker then shot Streeval again, this time killing him.

Whitaker was charged with first-degree murder, armed criminal action, and burglary. At trial, Whitaker proffered a self-defense instruction that included both burglary and arson as the forcible felonies warranting his use of deadly force. The pertinent part of Whitaker's proffered self-defense instruction provided the jury should find Whitaker not guilty if:

> First, if the defendant reasonably believed that the use of force was necessary to defend himself from what he reasonably believed to be the imminent use of unlawful force or imminent commission of **burglary or arson** by Carl Lee Streeval, and

Second, the defendant reasonably believed that the use of deadly force was necessary to protect himself from death or serious physical injury from the acts of Carl Lee Streeval, or the commission of ***burglary or arson*** by Carl Lee Streeval, then his use of deadly force is justifiable and he acted in lawful self-defense.

[Emphasis added.]

The circuit court agreed the instruction properly included burglary but refused to allow the instruction to refer also to arson on the ground that arson by Streeval no longer was "imminent" because Whitaker had already grabbed the gas jug and was getting ready to leave. As a result, the self-defense instruction presented to the jury read as follows:

First, if the defendant reasonably believed that the use of force was necessary to defend himself from what he reasonably believed to be the imminent use of unlawful force or imminent commission of ***burglary*** by Carl Lee Streeval, and

Second, the defendant reasonably believed that the use of deadly force was necessary to protect himself from death or serious physical injury from the acts of Carl Lee Streeval, or the commission of burglary by Carl Lee Streeval, then his use of deadly force is justifiable and he acted in lawful self-defense.

[Emphasis added.]

Burglary was defined for the jury as unlawfully entering or remaining in a building with the intent to commit a crime inside. During closing, Whitaker's counsel argued to the jury, based on the self-defense instruction that was given, that Whitaker should be acquitted if he was acting in reasonable self-defense of the crime of burglary by Streeval and that Streeval would have been committing a burglary if he entered the trailer unlawfully and with the purpose of committing arson. The state argued it was Whitaker who committed burglary because he was the one who entered the trailer

4

unlawfully and with the purpose of harming or killing Streeval. The jury found Whitaker not guilty of burglary but found him guilty of armed criminal action and, on the first-degree murder charge, the lesser-included crime of voluntary manslaughter.

**Analysis**

"This Court reviews *de novo* a trial court's decision whether to give a requested jury instruction." *State v. Bruner*, 541 S.W.3d 529, 534 (Mo. banc 2018) (quotation omitted). This Court will reverse due to instructional error if there is error in failing to submit an instruction and resulting prejudice to the defendant. *State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002). Failure to provide a required instruction, or to give it in accordance with an accompanying Note on Use, is "presumed to prejudice the defendant unless it is clearly established by the state that the error did not result in prejudice." *Id.* at 284.

Because the incident at issue in this case occurred in October 2013, the applicable version of section 563.031 provides:

> 1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person, unless:
>
> > (1) The actor was the initial aggressor; except that in such case his or her use of force is nevertheless justifiable provided:
> >
> > > (a) He or she has withdrawn from the encounter and effectively communicated such withdrawal to such other person but the latter persists in continuing the incident by the use or threatened use of unlawful force; or
> > >
> > > (b) He or she is a law enforcement officer and as such is an aggressor pursuant to section 563.046; or

(c) The aggressor is justified under some other provision of this chapter or other provision of law;

(2) Under the circumstances as the actor reasonably believes them to be, the person whom he or she seeks to protect would not be justified in using such protective force;

(3) The actor was attempting to commit, committing, or escaping after the commission of a forcible felony.

2. A person may not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless:

(1) He or she reasonably believes that such deadly force is necessary to protect himself, or herself or her unborn child, or another against death, serious physical injury, or any forcible felony;

(2) Such force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter a dwelling, residence, or vehicle lawfully occupied by such person; or

(3) Such force is used against a person who unlawfully enters, remains after unlawfully entering, or attempts to unlawfully enter private property that is owned or leased by an individual claiming a justification of using protective force under this section.

3. A person does not have a duty to retreat from a dwelling, residence, or vehicle where the person is not unlawfully entering or unlawfully remaining. A person does not have a duty to retreat from private property that is owned or leased by such individual.

4. The justification afforded by this section extends to the use of physical restraint as protective force provided that the actor takes all reasonable measures to terminate the restraint as soon as it is reasonable to do so.

5. The defendant shall have the burden of injecting the issue of justification under this section. If a defendant asserts that his or her use of force is described under subdivision (2) of subsection 2 of this section, the burden shall then be on the state to prove beyond a reasonable doubt that the defendant did not reasonably believe that the use of such force was necessary to defend against what he or she reasonably believed was the use or imminent use of unlawful force.

§ 563.031, RSMo Supp. 2013.

In other words, persons not disqualified under subsection 1(1)-(3) may use force to protect themselves or a third person from the imminent use of unlawful force by another,

but such persons may not use deadly force unless one of the circumstances in subsection 2(1)-(3) is present. *Bruner*, 541 S.W.3d at 536. Here, Whitaker relies solely on subsection 2(1), i.e., that he "reasonably believe[d] that such deadly force [was] necessary to protect himself … against … any forcible felony[.]" Specifically, Whitaker contends there was substantial evidence that Streeval was committing or about to commit either burglary or arson and that he reasonably believed deadly force was necessary to protect himself from either or both of those forcible felonies.

"In determining whether the circuit court erred in refusing to submit an instruction on self-defense, the evidence is viewed in the light most favorable to the defendant." *Bruner,* 541 S.W.3d at 534 (quotation omitted). "The circuit court must submit a self-defense instruction when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony, and failure to do so is reversible error." *Id.* (quotation and citation omitted). "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." *Id.* at 535 (quotation omitted).

Here, the circuit court was required to give the self-defense instruction Whitaker requested if there was substantial evidence, when viewed in the light most favorable to that instruction, that Whitaker: (1) was not the initial aggressor; (2) reasonably believed physical force was necessary to defend himself from what he reasonably believed to be the imminent use of unlawful force by Streeval; (3) reasonably believed deadly force was necessary to protect himself against any forcible felony (i.e., arson or burglary) by Streeval; and (4) did not have a duty to retreat. *Id.* at 536.

Viewed in the light most favorable to the instruction Whitaker requested, there was substantial evidence of each of these elements. Streeval, not Whitaker, was the initial aggressor. In the days and moments leading up to the fatal shot, Streeval had repeatedly threatened Whitaker with arson. There was substantial evidence Whitaker reasonably believed Streeval would act on these threats. When Streeval entered the trailer carrying the gas jug, there was substantial evidence that he was doing so unlawfully (i.e., that the trailer belonged to Whitaker) and that Streeval was entering with the intent to commit arson immediately. Even if the jury was not sure whether Streeval's entry was unlawful, substantial evidence remained that Whitaker reasonably believed Streeval was about to set the trailer on fire. As a result, Whitaker reasonably believed deadly force was necessary to protect himself from burglary or arson or both. Finally, Whitaker did not have a duty to retreat from his own property or from a dwelling he had not unlawfully entered or in which he was not remaining unlawfully. § 563.031.3.

The circuit court declined to instruct that Whitaker could use deadly force to protect himself from arson and, instead, instructed the jury that Whitaker could use deadly force only to protect against Streeval's burglary. The circuit court reasoned that, the instant Whitaker took possession of the gas jug inside the trailer, the threat of arson was no longer imminent and could not justify deadly force in self-defense. But this conclusion fails to view the evidence in the light most favorable to the requested instruction. The altercation between Whitaker and Streeval had been growing for hours, if not days. Over this time, the threat of arson not only was persistent, but Streeval's conduct also made the threat of arson increasingly likely and imminent. When Whitaker

8

followed Streeval into the trailer, the jury could find Whitaker reasonably believed Streeval was in the process of making good on his threats. Even if it were possible to say the likelihood of arson dropped slightly during the brief instant in which Whitaker and not Streeval had ahold of the gas jug inside the trailer, Whitaker lost hold of that jug when Streeval knocked the bathroom door off its hinges and onto Whitaker. At that moment, again, the jury could find Whitaker reasonably believed deadly force was required to stop Streeval from setting fire to the trailer.

It is all well and good to analyze the evidence on a moment by moment basis and claim the ability to parse these two individuals' purposes and beliefs across each indivisible instant of time. Reality, however, is much different. This entire altercation, starting with the first shot outside the trailer and ending with the fatal shot inside, was both dangerous and dynamic and certainly it lasted far less time than it takes to recount here. Part of viewing the evidence in the light most favorable to the requested instruction means the circuit court must indulge all reasonable inferences drawn from that evidence that support the giving of the instruction. *Westfall*, 75 S.W.3d at 280 ("The general rule is that an instruction must be based upon substantial evidence and the reasonable inferences therefrom."). Here, at the moment Whitaker aimed at Streeval and fired the fatal shot, the jury could reasonably infer from the evidence that Whitaker believed this deadly force was necessary to protect against Streeval's imminent arson. This is so even if, at that instant, Streeval did not have the gas jug in his hand because Whitaker no longer had it in his. To be sure, the jury is not required to conclude Whitaker acted reasonably fearing arson and using deadly force to stop Streeval from committing it, but

9

the jury was entitled to do so, and the circuit court's refusal to give a self-defense instruction on that basis was error.

This Court's inquiry does not end there, however, because "this Court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived defendant of a fair trial." *State v. Forrest*, 183 S.W.3d 218, 223-24 (Mo. banc 2006) (quotation omitted). The state argues no prejudice resulted because, during closing, Whitaker's counsel argued to the jury that the self-defense instruction predicated solely on Streeval committing burglary allowed the jury to consider arson as the felonious motive with which Streeval illegally entered the trailer. The state claims the jury, therefore, would not have been able to consider anything under the rejected self-defense instruction that it was not able to consider under the self-defense instruction it was given.

First, it should be noted that counsel's arguments during closing are neither evidence nor law and do not substitute for the circuit court's failure to instruct the jury properly regarding self-defense. Second, the state's argument fails to consider Whitaker's claim in context. Ownership of the trailer in which Streeval was killed was disputed. Whitaker was charged with burglary based, in part, on the allegation that he did not own that trailer. The jury plainly rejected this because it found Whitaker not guilty on that charge. But, even if the jury believed that Whitaker owned the trailer, that he could follow Streeval into it to prevent Streeval's threatened arson, and that he was under no duty to retreat from that place under section 563.031.3, it does not necessarily follow that the jury would believe all of this was clear to Streeval. In other words, there was

10

substantial evidence from which the jury could believe Whitaker was entitled to use deadly force to stop Streeval's imminent commission of arson in the trailer without also believing Streeval knew his entry into the trailer was unlawful. Instructing on both arson and burglary, as Whitaker requested, allowed the jury to bypass the ownership conundrum and focus entirely on whether Whitaker reasonably believed deadly force was necessary to protect himself from Streeval's imminent arson. This option was not available under the self-defense instruction that was given. Therefore, the state's argument that Whitaker was not prejudiced falls short of being "clearly established" as required in *Westfall* and is rejected.

## Conclusion

For the reasons set forth above, the judgment of the circuit court is vacated, and the case is remanded.[3]

_____
Paul C. Wilson, Chief Justice

All concur.

---

[3] Whitaker also argues the circuit court erred in refusing to admit evidence of Streeval's 1991 battery conviction, which Whitaker wished to use to corroborate his own knowledge of that conviction at the time of the incident. Because this Court has granted relief on other grounds, there is no need to address this issue. But, because the issue is likely to recur during any retrial on remand, this Court will address it. *Coomer v. Kan. City Royals Baseball Corp.*, 437 S.W.3d 184, 205 (Mo. banc 2014). A circuit court has broad discretion to admit or exclude evidence, and "an exercise of this discretion will not be disturbed unless it is clearly against the logic of the circumstances." *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011). Here, the circuit court's decision to exclude the 1991 battery conviction was not clearly against the logic of the circumstances. Whitaker claims he wanted the evidence to corroborate his own knowledge of Streeval's conviction, but the proffered copy of the conviction was not probative of Whitaker's knowledge or other mental state at the time of the incident charged in this case.

11