

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION THREE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED107254 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | |
| CHRISTOPHER ENDICOTT, | ) | Honorable Jason M. Sengheiser |
| | ) | |
| Defendant/Appellant. | ) | Filed: February 25, 2020 |

<u>Introduction</u>

Christopher Endicott (Appellant) appeals from the trial court's judgment entered after a jury found him guilty of second degree murder and armed criminal action. Because the trial court committed plain error by failing to instruct the jury on use of force in defense of another, the judgment is reversed and the case is remanded.

<u>Factual and Procedural Background</u>

Appellant and several companions were socializing one night at 1860 Saloon in the City of St. Louis. Present in Appellant's group were Dominique Wells (Wells) and Marvin Maggard (Maggard); they were later joined by two other friends, Jovan Tucker (Tucker) and Donovan Houltan (Houltan).

Around 1:30 a.m. the group left the saloon, with plans to move on to a different bar. The group planned to travel in two separate vehicles, with Wells driving one and Houltan driving the other. As the group left the bar to retrieve their vehicles, they encountered Jarrett Greene

(Victim). Maggard and Victim recognized one another and greeted each other enthusiastically. Witnesses testified both Maggard and Victim appeared to be extremely intoxicated, slurring their words, swaying, and nearly knocking one another over as they embraced in greeting.

After greeting Victim, Maggard turned to the group and announced, "Hey, y'all, this is my homeboy," and invited Victim to accompany the group to the next bar. The rest of the group exchanged glances, which they later testified indicated they did not want to bring the intoxicated stranger along with them. Appellant spoke up on the group's behalf and told Victim he was not welcome to accompany them that evening. Wells also told Victim he could not ride with him, and returned to his vehicle to wait for Appellant and Maggard.

Houltan and Tucker took this as a cue to head towards their vehicle. Maggard and Victim, ignoring Appellant's refusal, made as if to accompany them. When Houltan noticed Maggard and Victim about to enter his vehicle, he quickly locked it using his key fob, blocking their entry. Appellant, noticing Victim had disregarded his discouragement, came over to intervene. According to Houltan, Appellant again told Victim "very politely" he was not welcome to accompany them that evening, but perhaps some other night they might all meet up. At this Victim became angry, pulled a gun from his pocket, racked it, and pointed it at Appellant's face, saying, among other things, "I trump you."

As Victim pointed his gun at Appellant's face, Maggard intervened to try to calm Victim. As Maggard spoke to Victim, Houltan and Tucker slipped into their vehicle and began driving away. However, concerned for their friends, they lingered on the street nearby where they could watch and make sure their friends left safely.

Maggard was able to mollify Victim, and Victim put away his gun. Appellant and Maggard walked towards Wells' vehicle where Wells waited, sitting in the driver's seat. Victim

initially began walking away from the group after the first encounter but turned around and approached Wells' vehicle. Victim first approached the passenger side of Wells' vehicle where Maggard and Appellant stood. Surveillance footage depicted Victim reengage in conversation with Appellant, and Appellant raise his arms as if surrendering. Appellant later told police Victim again showed him the gun, removed the magazine several inches, and then replaced it in the gun. Victim then walked around Wells' vehicle, opened the rear door, and partially entered the vehicle behind Wells. Appellant, who had retrieved his own firearm, circled to where Victim was entering Wells' vehicle, pointed the gun at Victim's face, and ordered Victim to the ground. Victim exited Wells' vehicle to confront Appellant and swiped at Appellant's gun with his hand. Appellant later told police Victim had his own gun in his hand as he attempted to enter Wells' vehicle and that Victim used his gun to strike out at Appellant's gun. However, investigators testified at trial that Victim's gun was found in his right pocket with no magazine, and two empty magazines were found in his left pocket. Investigators also testified Victim was found holding a metallic lighter in his hand. Surveillance footage of the incident showed Victim swing his arm towards Appellant, and Appellant fire his gun twice. Victim began to reel backwards and fall, and Appellant stepped towards him firing more shots. Victim collapsed in front on Wells' vehicle, and Appellant fired several more shots at Victim.

After the shooting, Appellant and the others left the scene. A short time later police arrived, finding Victim dead. Police made contact with the saloon owner, who provided police with surveillance footage showing the shooting. A search of Victim's body revealed a Glock handgun in his pocket, which was unloaded. Victim's pockets also contained a digital scale, a bottle of vodka, and what appeared to be cocaine. A medical examination of Victim revealed a blood alcohol content of .292 and cocaine in his system.

3

Three and a half hours after the shooting, Appellant surrendered himself at a police station, along with Wells, Houltan, and Tucker. All four made statements to the police; Appellant admitted shooting Victim. Appellant also turned over the gun he used to shoot Victim to the police.

The State of Missouri (State) charged Appellant with first-degree murder and armed criminal action. The case went to trial, resulting in a mistrial due to a hung jury. The case went to trial a second time. The jury heard the testimony of the saloonkeeper, several investigators, and the testimony of both Houltan and Tucker, who witnessed the encounter. The surveillance footage depicting the shooting was played to the jury. Appellant chose not to testify. Neither Maggard nor Wells testified.

In addition to the charged offenses, the trial court instructed the jury on murder in the second degree and voluntary manslaughter. The trial court also instructed the jury on use of force in self-defense, and self-defense in vehicles. After deliberation, the jury returned a verdict of guilty of second-degree murder and armed criminal action. This appeal follows.

Additional facts necessary to our analysis appear in the discussion section below.

<u>Points on Appeal</u>

Appellant brings three points on appeal. However, Appellant's second point is dispositive of this appeal. Point II claims the trial court plainly erred by not *sua sponte* instructing the jury on use of force in defense of another person. Because we agree the trial court plainly erred, we reverse the judgment on this point.

4

<u>Standard of Review</u>

Although Appellant claims the trial court should have instructed on use of force in defense of another, he did not request such an instruction, nor did he include this claim in his motion for a new trial. As such, Appellant requests plain error review.

Unpreserved instructional errors are reviewed under the plain error standard, and we will reverse when a manifest injustice or miscarriage of justice would otherwise result. <u>State v. Wurtzberger</u>, 40 S.W.3d 893, 897-98 (Mo. banc 2001). Failure to give a mandatory instruction is trial court error, and is grounds for reversal on plain error review. <u>State v. Bolden</u>, 371 S.W.3d 802, 806 (Mo. banc 2012), citing <u>State v. Westfall</u>, 75 S.W.3d 278, 284 (Mo. banc 2002). "An appellate court, when confronted with the argument that the trial court erred in refusing to instruct on self-defense, must view the evidence and all reasonable inferences in the light most favorable to the defendant." <u>State v. Miller</u>, 91 S.W.3d 630, 632 (Mo. App. W.D. 2002), citing <u>State v. Francis</u>, 60 S.W.3d 662, 673 (Mo. App. W.D. 2001). Whether a use of force justification defense has been raised by the evidence is a question of law, which we review *de novo*. <u>State v. Cummings</u>, 514 S.W.3d 110, 116 (Mo. App. W.D. 2017). Self-defense and use of force in defense of another are closely-related justification defenses, governed by the same statute. Section 563.031.5.[1] As such, many cases discussing aspects of one are applicable to the other, and are sometimes used interchangeably herein. See <u>Bolden</u>, 371 S.W.3d at 805 (use of force in defense of another "is essentially an extension of the self-defense justification").

<u>Discussion</u>

Appellant claims the evidence adduced at trial warranted an instruction on use of force in defense of another, such that the trial court committed plain error by not proffering it, despite the

---

[1] All statutory references are to RSMo Cum. Supp. 2013, unless otherwise specified.

defense not requesting it. Specifically, he claims substantial evidence showed Appellant used deadly force in defense of Wells, the driver of the vehicle that Victim was attempting to enter.

The use of force, including deadly force, to protect others is lawful in some circumstances under Section 563.031. This Court has previously explained:

> In regard to the concept of self-defense, what one may do for himself, he may do for another.... Defense of another is available if, under the circumstances as the actor reasonably believes them to be, the person whom he seeks to protect would be justified in using such protective force in defense of himself. The reasonableness of a defendant's belief in the necessity of using force is a question for the jury. Therefore, whenever there is evidence supporting this defense, this instruction must be given.

State v. Vancil, 976 S.W.2d 628, 630 (Mo. App. E.D. 1998) (citations omitted).

The defendant has the burden of injecting the issue of justification into the case; if successful, the State bears the burden of proving beyond a reasonable doubt that the defendant did not reasonably believe force was necessary. Section 563.031.5. "A justification defense must be given when 'substantial evidence' has been presented to support it." Cummings, 514 S.W.3d at 116. "Substantial evidence" means enough evidence to "put[] a matter in issue." State v. Avery, 120 S.W.3d 196, 200 (Mo. banc 2003). The evidence may come from the defense's own case, the State's case, or the testimony of third parties. Cummings, 514 S.W.3d at 116. "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." Westfall, 75 S.W.3d at 280. "Moreover, the instruction must be given even if the evidence supporting the defense is inconsistent with the defendant's testimony or theory of the case and regardless of whether the defendant requested it." Cummings, 514 S.W.3d at 116. "If a justification defense is injected into the case by *any* evidence, the judge must instruct, *even if the defendant does not desire* such an instruction." Id. at 117 (emphasis in original). "Failure to submit an instruction on a justification defense that is

supported by the evidence constitutes reversible error." Id. at 116-17, citing Avery, 120 S.W.3d at 200.

In order to be entitled to an instruction on use of force in defense of another, substantial evidence must show Appellant possessed a reasonable belief Wells himself would have been privileged to use deadly force in his own defense. This is established by showing Appellant reasonably believed that (1) Wells was not the initial aggressor, and physical force was necessary to defend Wells from what Appellant reasonably believed to be the use or imminent use of unlawful force by another; (2) Appellant reasonably believed deadly force was necessary to protect Wells against death, serious physical injury, or any forcible felony; (3) and Wells did not have a duty to retreat. State v. Pounders, 913 S.W.2d 904, 907 (Mo. App. S.D. 1996); see also State v. Kendrick, 550 S.W.3d 117, 123-24 (Mo. App. W.D. 2018), citing State v. Bruner, 541 S.W.3d 529, 536-37 (Mo. banc 2018) (updating elements of self-defense in accordance with statute).

Our review of the record, in the light most favorable to Appellant, reveals ample evidence to support Appellant may have acted in defense of Wells. The evidence at trial shows Appellant had taken it upon himself to be spokesperson and defender of the group during Victim's intrusion. Tucker testified that because she was the only female in the group, she was happy to have Appellant step forward and speak for her when they encountered the threatening stranger. Houltan testified when Victim brandished his weapon and pointed it at Appellant, Houltan was standing behind Appellant and in the line of fire. Houltan testified he feared for his life because if Victim had shot at Appellant, Houltan likely would have been hit as well. Given that Victim was acting intoxicated and belligerent, such a fear was reasonable, and demonstrates Victim had menaced not just Appellant but others in the group as well. Tucker testified she assumed

7

Victim's gun was loaded when he racked it, and she and Houltan sneaked by Victim to escape in Houltan's car while Appellant was the focus of Victim's ire. Houltan testified that after he and Tucker made it into the vehicle, they lingered nearby to watch because he feared for the safety of "my friends," meaning Appellant, Wells, and Maggard, who were still in the presence of the intoxicated and armed stranger. Houltan also testified that after he heard the gunshots he feared Appellant was the one who had been shot because Houltan knew Victim was armed.

Although neither Wells nor Appellant testified at trial, sufficient evidence was presented from Appellant's statements to police, the eyewitness accounts of Houltan and Tucker, and the surveillance footage of the shooting to show Appellant may have reasonably believed Wells was in imminent danger when Victim began entering the car behind Wells. Victim had been told more than once he was not welcome to accompany the group. Victim had responded to this discouragement by brandishing a gun and threatening deadly force.[2] Uninvited and unwanted, the armed Victim began to enter the car behind Wells. Appellant was present as all these events occurred, and was able to form a reasonable belief that Wells was in imminent danger from Victim.

At trial there was conflicting evidence about what transpired at the moment of the shooting, but viewed in the light most favorable to Appellant, the evidence supports Appellant may have reasonably believed force was necessary to defend Wells. The evidence at trial strongly supports that Victim had threatened Appellant with his gun during the first encounter at Houltan's vehicle. Appellant also told police that afterwards, when Victim approached Wells' vehicle, Victim again displayed his gun to Appellant, pulled out the magazine, and offered to

---

[2] The Missouri Supreme Court has held that brandishing a deadly weapon constitutes "deadly force" because "the risk of death or serious physical harm is significantly elevated when one of the parties to an angry confrontation displays a handgun." State v. Parkhurst, 845 S.W.2d 31, 36 (Mo. banc 1992). So it was in this case, as the escalation towards the deadly shooting was initiated by Victim's decision to threaten the group with a gun.

provide Appellant with the magazine or bullets. Appellant told police Victim then replaced the magazine in the gun and walked to the driver's side of the vehicle and began to enter the back seat, with the gun still in his hand. Appellant stated that when he circled the vehicle to confront Victim, and when Victim struck at Appellant's gun, Victim's gun was in his hand. Tucker testified that after the shooting when the group met and discussed the events that had just transpired, Wells stated he saw a gun in Victim's hand as he began entering his vehicle.

The State points out that evidence suggesting Victim's gun was in his hand as he entered Wells' vehicle is contradicted by other evidence; specifically, the surveillance video does not show Victim's gun in his hand at the moment of the shooting, and investigators at the scene found Victim's gun in his pocket unloaded, with two magazines in a different pocket. However, this does not defeat Appellant's claim. As stated above, we review Appellant's claim by viewing all evidence and inferences in the light most favorable to Appellant. Therefore, where the evidence conflicts as to whether Victim's gun was in his hand when he entered the vehicle, we view it in the light most favorable to Appellant's account. This is not to say we must disregard the irrefutable physical evidence to the contrary. The surveillance footage depicting the shooting continued to record up until police arrived at the scene of the shooting. If Victim's gun was in his hand when he was shot, then there is no reasonable explanation for how investigators subsequently found it in his pocket.

However, this is not dispositive for two reasons. First, our analysis focuses not on what the circumstances were, but on *how they reasonably appeared to Appellant*. Section 563.031.1; see also MAI-CR3d 306.08A ("reasonably believe" means grounds for defendant to have formed a belief in necessity of force. "This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false."). Thus, the relevant inquiry is

9

not whether it was true or false that Victim's gun was in his hand, but whether it was reasonable for Appellant to have believed it was. Our review of the record shows sufficient evidence to support Appellant's reasonable belief Victim was holding his gun. Victim had brandished his weapon at Appellant not once but twice immediately preceding the shooting. Evidence also suggests Appellant could have mistaken a metallic lighter in Victim's hand for Victim's gun. This belief, mistaken or not, may have been reasonable under the circumstances, as it was nighttime and the shooting happened very quickly, mere moments after Victim had brandished his gun at Appellant and threatened him.

Second, we note the case does not turn solely on whether Victim's gun was in his hand, or even whether Appellant reasonably believed it was. Wherever the gun happened to be at the moment of the shooting, the uncontradicted evidence showed Victim was still armed when he began entering Wells' vehicle. If Victim had decided to use his gun against the vehicle's occupants, he needed only to reach into his pocket to retrieve it. Even if Appellant did not see Victim's gun in his hand, Appellant may have reasonably believed Victim was readily capable of retrieving his gun and using it against the vehicle's occupants.

The manifest injustice that may be caused by deficient instructions is not limited to the instruction phase of the trial. When the jury is incompletely instructed, they are not only ignorant of the relevant law but risk being misled by counsel's argument. See State v. Hiltibidal, 292 S.W.3d 488, 494 (Mo. App. W.D. 2009) (prosecutor's argument may compound instructional error and mislead jury). Such a risk was present here: During closing arguments, the prosecutor pointed out to the jury that Appellant had not withdrawn from the encounter when he had an opportunity, but instead had followed Victim to the driver's side of the vehicle where he was attempting to enter. The prosecutor argued the jury may infer Appellant's guilt from this

fact, as it showed Appellant did not reasonably fear for his own life because he followed the danger instead of fleeing from it. However, at oral argument the State conceded that, although it disputed whether Appellant lawfully occupied a vehicle at the time of the shooting, there was no question that Wells was lawfully occupying the vehicle Victim was attempting to enter. This means under the justification statute Wells would not have had a duty to retreat before using force against Victim. Section 563.031.3 ("A person does not have a duty to retreat from a dwelling, residence, or vehicle where the person is not unlawfully entering or unlawfully remaining."). The State's argument to the jury thus compounds the instructional error, because the jury was not permitted to consider whether withdrawal was an option for Wells, or whether Wells even had a duty to withdraw.

We acknowledge Appellant asked for and received two instructions on self-defense, and the jury rejected them both. We also acknowledge a jury could reject Appellant's claim he acted in defense of another on the same or similar grounds. However, where it is supported by the evidence, an instruction on use of force in defense of another must be given, even where it is inconsistent with Appellant's defense at trial. Cummings, 514 S.W.3d at 117. Instructing on other theories of justification in no way obviates the trial court's obligation to instruct on *all* theories of justification supported by the evidence. State v. Jones, 627 S.W.2d 322, 323 (Mo. App. W.D. 1982). Without proper instructions, we are left to conjecture on whether the jury found Appellant guilty on a correct and lawful basis. Because the jury was not given an instruction on the issue of whether Appellant acted in lawful defense of Wells, they were unable to consider all legal theories supported by the evidence under which Appellant's action may have been justified. Such an error is reversible under a plain error standard. Hiltibidal, 292 S.W.3d at

11

495 ("Once there is a finding of error in failing to properly instruct on self-defense, a manifest injustice will generally be found.").

"The defense-of-others justification is essentially an extension of the self-defense justification, in that the actor may do in another's defense anything the person himself may have lawfully done in the circumstances." Bolden, 371 S.W.3d at 805 (citations omitted). "It follows that, if the defendant carries the burden of introducing substantial evidence to support a defense-of-others instruction, it is error for the trial court to fail to submit a defense-of-others instruction to the jury just as it is error to fail to submit a self-defense instruction." Id. "A trial judge may not immediately recognize the need for a self-defense instruction in a case where no notice had been given to the judge that self-defense would be an issue." Hiltibidal, 292 S.W.3d at 494. "Nonetheless, this case illustrates the substantial burden placed on the trial court to be alert to evidence raising the issue of self-defense." Id. Here, sufficient evidence was adduced at trial to raise the issue of use of force in defense of another, which, under well-established precedent, rendered its instruction mandatory.

Nevertheless, the State argues that, notwithstanding the ample precedent invoked by Appellant, trial courts in fact have no obligation to instruct the jury on justification defenses when unrequested by the defendant. In support of this proposition, the State directs the Court's attention to a footnote in this Court's prior case, State v. Isbell, 524 S.W.3d 90, 93 n.4 (Mo. App. E.D. 2017):

> We express reservations regarding Defendant's claim, because the subsequent statutory history appears to have abrogated [the duty of the trial court to *sua sponte* offer self-defense instructions]. The former statutes, upon which this duty was premised, mandated trial courts to instruct upon all questions of law arising in the case, "whether requested or not." See Section 5231 (1909), Section 4025 (1919), Section 3681 (1929), Section 4070 (1939), Section 546.070 (1949), 546.070 (1978). This directive was removed by the Missouri Legislature in 1984. See Section 546.070 (1986), Section 546.070, RSMo Cum. Supp. 2015.

12

Missouri Supreme Court Rules have also eliminated similar mandates. Compare Rule 26.02(6) (1966) with Rules 27.02 (2016) and 28.02 (2016).

There are several problems with the State's reliance on State v. Isbell. For example, as the State acknowledges, this footnote is dictum. In Isbell, this Court ultimately found the defendant was not entitled to an instruction on self-defense because such an instruction was not supported by substantial evidence. Id. at 94. Thus, the issue of whether the trial court was obligated to *sua sponte* instruct on self-defense on the basis of substantial evidence at trial was not before this Court.

We are hesitant to follow the dictum in Isbell, as it would mean contravening precedent from the Missouri Supreme Court, which we are without authority to do. See Bolden, 371 S.W.3d at 805; Westfall, 75 S.W.3d at 280-81, 284 ("Failure to provide the required instruction, or give it in accordance with an accompanying Note on Use, may have adversely influenced the jury and is reversible error."). Further, such a holding from this Court would conflict with the Missouri Approved Instructions for criminal law. Use of force in defense of another is included in the MAI–CR3d 306.00 series titled "INSTRUCTIONS REQUIRED WHETHER REQUESTED OR NOT." The notes on use accompanying the instruction mandate, without qualification, "Whenever there is evidence supporting this defense, this instruction must be given." MAI-CR3d 306.08A, n.2.[3] "Failure to give an MAI-CR instruction in accordance with an accompanying note on use is error." State v. White, 58 S.W.3d 627, 633 (Mo. App. W.D. 2001); Rule 28.02(f).[4] A holding from this Court abrogating the trial court's obligation to instruct on use of force in defense of another when supported by the evidence absent a request

---

[3] This contrasts with other instructions in MAI-CR3d, which explicitly state they are to be given "only upon request of the defendant". MAI-CR3d 308.02, n.2. This distinction adds further support to our view the trial court retains an independent duty to deliver mandatory instructions.

[4] Mo. R. Crim. P. (2018).

13

from the defendant would conflict with the Missouri Approved Instructions, contravene the authority of the Missouri Supreme Court, and subject trial courts to inconsistent precedents. As such, we decline to so hold.

Finally, the State complains Appellant may not make this claim of error because use of force in defense of another was not the defense's primary theory of the case. However, where justification is raised in the evidence, "[t]he judge must give the instruction regardless of whether it was requested or not, and regardless of whether self-defense is inconsistent with the defendant's defense." Hiltibidal, 292 S.W.3d at 494 (citations omitted); see also Cummings, 514 S.W.3d at 117 (trial court obligated to instruct on defense of others justification *even when defense objects to the instruction*). In short, Appellant does not have a burden to demonstrate that use of force in defense of another was his main defense at trial, but only that sufficient evidence was injected into the proceedings such that it puts the matter at issue, and may form the basis of acquittal.

## Conclusion

Because substantial evidence was adduced at trial to warrant an instruction on use of deadly force in defense of another, the trial court committed plain error by not offering such an instruction to the jury. Therefore, the judgment of the trial court is reversed, and this matter is remanded for a new trial.[5]

---

[5] Appellant's first point on appeal claims the trial court plainly erred by failing to *sua sponte* define the term "lawful occupancy" in the instruction submitted to the jury regarding use of force in defense of an occupant of a vehicle. Appellant concedes he did not request the trial court define "lawful occupancy" for the jury, and thus did not preserve this error for review. Not only did Appellant not supply the trial court with a proposed definition for "lawful occupancy", but he also did not supply this Court with one. The trial court did not plainly err by not defining a term which is undefined in the pattern jury instructions because the notes on use explicitly forbids it. MAI-CR3d 333.00, n.2.F. Deviation from approved instruction forms and accompanying notes on use by the trial court is presumptively erroneous; therefore, the trial court did not plainly err by adhering to them. White, 58 S.W.3d at 633; Rule 28.02(f).

_____
SHERRI B. SULLIVAN, J.

Mary K. Hoff, P.J., and
Angela T. Quigless, J., concur.